773 F.2d 1073
 27 Wage & Hour Cas. (BN 465
 Robert A. WEIR, Plaintiff/Appellant,
v.
The ANACONDA COMPANY, Atlantic Richfield Company, and the
Anaconda Company Savings Fund Plan for Salaried
Employees, the Chemical Bank, Trustee,
Defendants/Appellees.
 No. 82-2020.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 9, 1985.
 
 Michael E. Whitsitt, Overland Park, Kan., for plaintiff/appellant.
 Ernest N. Yarnevich, Dear, Yarnevich & Carey, Kansas City, Kan., Jack L. Whitacre, Mark P. Johnson, of Spencer, Fane, Britt & Browne, Kansas City, Mo., for defendants/appellees.
 Before HOLLOWAY, Chief Judge, and McWILLIAMS and BARRETT, Circuit Judges.
 HOLLOWAY, Chief Judge.
 
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.
 
 
 2
 * Robert Weir (plaintiff) is the former employee of The Anaconda Company (Anaconda or defendant). Plaintiff brought suit against Anaconda for various employee benefits after he was terminated.
 
 
 3
 During his employment with Anaconda, he participated in company stock option and savings plans. Plaintiff's rights under these plans are the subject of this appeal. The district court granted summary judgment for Anaconda as to the issues now before this court. Plaintiff has appealed. We affirm.
 
 A. Facts
 
 4
 Plaintiff was an employee of Anaconda from 1957 until his termination on September 10, 1979, which became effective November 30, 1979. II R. 222. When Anaconda terminated him, plaintiff was Anaconda's Marketing Manager for Telephone Cables and Small Wire Sales. Exhibit 25.
 
 
 5
 Jerry White became plaintiff's supervisor in May of 1978. III R. 11. White and plaintiff did not have a good working relationship. In January of 1979 White evaluated plaintiff's performance during the latter half of 1978 as inadequate. I R. 98. White also stated that: "[plaintiff's] approach to his job is highly reactive and ultra-conservative. He gets bogged down in detail and is reluctant to delegate decision making to subordinates." Id. The disagreements between White and plaintiff continued, and White eventually terminated plaintiff.
 
 
 6
 Plaintiff brought suit against Anaconda to recover benefits under the savings fund and the stock option plans. Defendant removed the action to federal court on diversity and federal question grounds. Plaintiff's complaint alleged four counts. II R. 230. First, he asserted a claim for benefits under the stock option plan. Second, he claimed that some benefits under the savings plan were unjustly withheld. Third, he asserted a claim for tortious interference with contractual rights. Fourth, he averred that benefits under the stock option plan and savings plan were wages under Kansas law.
 
 
 7
 Anaconda moved for summary judgment. I R. 76. Plaintiff also moved for summary judgment and filed a response to Anaconda's summary judgment motion. I R. 153.
 
 
 8
 The court granted Anaconda summary judgment on Counts I, III and IV. II R. 244. As to Count II, which was plaintiff's claim under the savings plan, the court remanded to the Administrative Committee responsible for reviewing claims under the savings fund plan for their decision and a report to the court. II R. 244.[1] The Committee determined that plaintiff was entitled to benefits under the plan. The district court, therefore, granted plaintiff summary judgment on Count II. II R. 336.
 
 
 9
 Plaintiff does not raise any issue on appeal as to either Count II or Count III (tortious interference with contractual relations). See Appellant's Brief 1. He challenges the district court's decision granting Anaconda summary judgment on his claim under the stock option plan (Count I) and his claim that benefits under the stock option plan and savings fund plan are wages under Kansas law (Count IV).
 
 B. The district court's opinion
 
 10
 In granting summary judgment for Anaconda on plaintiff's claim under the stock option plan, the court concluded that it must uphold the action of the policy committee unless it acted arbitrarily, in bad faith, or fraudulently in denying plaintiff's claim. The court rejected plaintiff's argument that he was entitled to a de novo hearing. Because plaintiff had offered no evidence, by affidavit or otherwise, that the policy committee had acted arbitrarily, in bad faith or fraudulently, the district court granted Anaconda's motion for summary judgment.
 
 
 11
 The stock option plan agreement gave an employee the right to purchase Anaconda's stock at a fixed price per share for ten years, and if terminating employment, for three months after termination of employment. I R. 14-15. The agreement also provided that
 
 
 12
 If, however, you are dismissed from the employ of the company or a subsidiary for cause, of which the Committee shall be the sole judge, this option shall forthwith expire.
 
 
 13
 I R. 15.
 
 
 14
 Plaintiff attempted to exercise his option on January 23, 1980. The Anaconda Compensation Policy Committee denied the exercise of the option reasoning that plaintiff was terminated for cause and was therefore precluded from exercising the option. II R. 231.
 
 
 15
 The court first rejected plaintiff's argument that he was entitled to a trial de novo, holding that the scope of review of a decision properly within the discretion of the plan committee is limited to determining whether it acted arbitrarily, in bad faith, or fraudulently. II 231-32. Believing that there was no issue over whether the decision was within the discretion of the plan committee, the court concluded it was faced with the narrow question whether the committee's decision was made arbitrarily, in bad faith, or fraudulently. II R. 232.
 
 
 16
 The court rejected plaintiff's argument that Anaconda had to afford him due process protections under the stock option plan. II R. 232, 234. The court then noted that plaintiff had made no argument that either committee acted fraudulently or in bad faith. He did claim that the committee actedarbitrarily in that they reached the wrong decision, and the court therefore concluded that the only issue before it as to Count I was whether the committee's decision that plaintiff was terminated for cause was arbitrary in the sense that it was not supported by sufficient evidence. II R. 234.
 
 
 17
 The court held that there was sufficient evidence for the committee to determine that plaintiff was terminated for cause. An affidavit attached to Anaconda's motion for summary judgment stated that the committee relied on a memorandum from Jerry White plaintiff's supervisor. In the memorandum White stated that plaintiff was unable to provide the level of professional management necessary and was lacking in the analytical and planning skills essential to the position. White also commented that plaintiff was hostile and argumentative, and he was "either unwilling or unable to perform the critical mission of marketing manager." II R. 234.
 
 
 18
 The court concluded that the White memorandum made it clear that the committee's decision that plaintiff was terminated for cause was not arbitrary. II R. 235. There was also ample evidence from plaintiff's deposition that the White memorandum was not prepared as a pretext to justify plaintiff's termination as for cause. II R. 235-36. Nor was there any evidence or claim that the reasons for plaintiff's termination in White's memorandum were fabricated to deny plaintiff his rights under the plan. Accordingly, the court granted Anaconda summary judgment on Count I.
 
 
 19
 The district court also granted Anaconda summary judgment on Count IV. The court rejected plaintiff's argument that benefits demanded under the stock option plan and savings fund plan were wages under Kansas law, thereby making Anaconda's failure to pay those benefits a violation of Sec. 44-315. Kan.Stat.Ann. (1981). Section 44-315 requires that an employer pay an employee for earned wages when the employee resigns or is discharged. Under Kansas law wages are defined as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis less authorized withholding and deductions." Kan.Stat.Ann. Sec. 44-313(c) (1981). The court rejected the argument that benefits under the stock option plan were like commissions or vacation pay, both of which had been held to be within the definition of wages. See Holder v. Kansas Steel Built, Inc., 224 Kan. 406, 582 P.2d 244 (1978); Benjamin v. Manpower, Inc., 3 Kan.App.2d 657, 600 P.2d 148 (1978).
 
 
 20
 The court reasoned that to obtain benefits under the stock option plan an employee had to exercise an option. Such benefits the court believed were not contemplated by the drafters of Secs. 44-313 and 44-315, Kan.Stat.Ann. (1981), to be included in the term wages; they do not fit the statutory definition of wages, nor do they fall within the common understanding of that term. II R. 244. Accordingly, the district court granted Anaconda summary judgment on Count IV.
 
 
 21
 On appeal the plaintiff argues that: (1) Anaconda's failure to provide him with any due process safeguards before refusing to permit him to exercise his stock option requires that the district court review the decision de novo, and therefore the decision should not be permitted to stand where the district court apparently determined that plaintiff was actually discharged for cause;[2] and (2) benefits under the stock option plan and savings fund plan are wages under Kansas law entitling him to payment for stock option benefits and penalties for delay in payment of stock option benefits and savings fund benefits. Appellant's Brief 8, 21, 38.II
 
 A. The Stock Option Plan (Count I)
 
 22
 1. Scope of Review of the Plan Committee's Decision
 
 
 23
 Plaintiff argues that because the plan committee did not provide him with any due process safeguards, such as an opportunity to present evidence, before denying him stock option benefits, he is therefore entitled to a de novo hearing in the district court. We disagree.
 
 
 24
 The district court correctly ruled that the committee's decision must be upheld if it was properly within the committee's discretion and not arbitrary, in bad faith, or fraudulent. In Moore v. Adkins, 2 Kan.App.2d 139, 576 P.2d 245 (1978), a plan committee and corporate trustee of a qualified employee benefit plan brought an action seeking court instructions for distribution of trust funds upon termination of the plan. The plan provided that the plan committee had the power to determine all questions as to "status and rights" of participants. It also provided that any determination by the plan committee shall be final and conclusive, and the committee's interpretations of the document in good faith were binding. On these facts the court held that:
 
 
 25
 judicial review of a decision properly within the discretion of the plan committee is limited to a determination of whether the committee has been arbitrary or has acted in bad faith or in a fraudulent manner. The rule parallels that in Kansas and elsewhere as to judicial review of a trustee's discretion.
 
 
 26
 Id. 576 P.2d at 250 (citations omitted); see also Imler v. Southwestern Bell Telephone Co., 8 Kan.App.2d 71, 650 P.2d 712, 714-15 (1982); cf. Pioneer Container Corp. v. Beshears, 235 Kan. 745, 684 P.2d 396, 398 (1984) (district court's standard of review of administrative action is restricted to whether as a matter of law: (1) the tribunal acted fraudulently, arbitrarily or capriciously; (2) the administrative order was supported by substantial evidence; and (3) the tribunal's actions were within the scope of its authority).
 
 
 27
 Plaintiff argues that the committee's decision is not entitled to deference and it should be subject to de novo review because plaintiff was never given the opportunity to present evidence to the committee or to appeal the committee's decision. Appellant's Brief 15, 17. We reject this argument.
 
 
 28
 Kansas courts do not favor de novo review in cases such as this. For example in Imler v. Southwestern Bell Telephone an employee brought "a contract action concerning the Employee Retirement Income Security Act (ERISA) plan." 8 Kan.App.2d 71, 650 P.2d 712, 714 (1982). The appeals court upheld the lower court's decision to grant summary judgment for the defendant-employer. The court cited Moore v. Adkins for the appropriate standard of review, id., and also stated that "[d]e novo review is not favored by the law of this state, and the courts have been reluctant to permit it." Id., 650 P.2d at 715; cf. Nurge v. University of Kansas Medical Center, 234 Kan. 309, 674 P.2d 459, 464 (1983) ("Statutes purporting to grant the authority to hold trials de novo on appeal are to be strictly construed."); Brinson v. School District No. 431, 223 Kan. 465, 576 P.2d 602, 606 (1978) (district court erred in examining issues de novo while reviewing decision of administrative tribunal under authority of omnibus appeal statute; and district court's review is limited to determining whether agency acted: (1) fraudulently, arbitrarily, or capriciously; (2) the administrative order is supported by substantial evidence; and (3) the tribunal's action is within its authority).
 
 
 29
 On appeal, as in the district court, plaintiff principally relies on General Electric Co. v. Martin, 574 S.W.2d 313 (Ky.Ct.App.1978). The district court concluded that he did "not read General Electric or the other cases cited by plaintiff" to require an employer "to provide the full panoply of procedural safeguards inherent in the concept of 'due process' as that term is defined in the area of statutory administrative agencies." II R. 234. We agree with the district court on this point.[3] The district court correctly denied a de novo hearing and used the proper standard of review--whether the Committee's ruling was arbitrary, in bad faith, or fraudulent.
 
 2. Summary Judgment
 
 30
 The district court granted defendant's motion for summary judgment on Count I. Plaintiff says that the summary disposition was error.
 
 
 31
 The party moving for summary judgment has " 'the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party.' " Brown v. Parker-Hannifin Corp., 746 F.2d 1407, 1411 (10th Cir.1984) (quoting Adickes v. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)); see also 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2716, at 643 (1983). The movant must demonstrate entitlement to summary judgment beyond a reasonable doubt, and summary judgment is inappropriate if an inference may be drawn from the facts by which the nonmovant might recover. E.g., Brown, 746 F.2d at 1411; Mustang Fuel Corp. v. Youngstown Sheet and Tube Co., 516 F.2d 33, 36 (10th Cir.1975). The standard that an appellate court applies in reviewing a summary judgment is the same as that initially employed in the district court under Fed.R.Civ.P. 56(c). E.g., United States v. Gammache, 713 F.2d 588, 594 (10th Cir.1983); 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2716, at 52 (Supp.1985).
 
 
 32
 The district court here stated that plaintiff had not asserted that the plan committee had acted in bad faith[4] or fraudulently. Because plaintiff argued that the decision was arbitrary in the sense that it was wrong, the court believed that the only question before it was whether the committee's decision that plaintiff was terminated for cause was supported by substantial evidence and therefore not arbitrary. II R. 234. See e.g., Unified School District No. 461 v. Dice, 228 Kan. 40, 612 P.2d 1203, 1211 (1980) (arbitrary, oppressive or capricious conduct is shown where an order of an administrative tribunal is based upon findings not substantially supported by evidence in the record); Neeley v. Board of Trustees, Policeman's and Firemen's Retirement System, 212 Kan. 137, 510 P.2d 160, 166 (1973) (same).
 
 
 33
 We believe that defendant's exhibits supporting the motion for summary judgment demonstrated that the plan committee had sufficient evidence before it to conclude that plaintiff was terminated for cause and was therefore ineligible for stock option benefits. There being no definition of "cause" in the stock option plan, we resort to its ordinary meaning as the district court did. "Cause" as defined by the district court is a shortcoming in performance which is detrimental to the discipline or efficiency of the employer. Incompetency or inefficiency or some other cause within the control of the employee which prohibits him from properly completing his task is also included within the definition. A discharge for cause is one which is not arbitrary or capricious, nor is it unjustified or discriminatory. II R. 234-35 (district court opinion) (citing TWA v. Beaty, 402 F.Supp. 652, 658 (S.D.N.Y.1975); Georesearch, Inc. v. Morriss, 193 F.Supp. 163, 179 (W.D.La.1961), aff'd, 298 F.2d 442 (5th Cir.1962); Collins v. Board of Fire and Police Commissioners, 84 Ill.App.3d 516, 39 Ill.Dec. 898, 405 N.E.2d 877, 881 (1980)).[5]
 
 
 34
 Under this definition of cause, Anaconda's motion for summary judgment plainly established that the plan committee had sufficient evidence before it to conclude that plaintiff was terminated for cause. Anaconda attached an affidavit of William M. Read to its motion for summary judgment.[6] Mr. Read stated that the Compensation Policy Committee relied on a memorandum of plaintiff's supervisor, J.E. White, in determining that plaintiff was terminated for cause and therefore not entitled to exercise an option under the stock option plan. I R. 94.
 
 
 35
 In Mr. White's memorandum, on which the plan committee relied, White stated that he found plaintiff "unable to provide the level of professional management necessary to achieve the expectations of the position and to be considerably lacking in the necessary analytical and planning skills that [White] deemed essential in the position." I R. 104. White further stated that he found plaintiff "hostile and argumentative," and his "negative attitudes manifested themselves to others and had a deleterious effect upon his peers and subordinates." I R. 104. Mr. White "unhappily concluded" that "for these performance-related reasons, as well as a negative attitude" that plaintiff was "either unwilling or unable to perform the critical mission of marketing manager." I R. 104.
 
 
 36
 For purposes of its motion for summary judgment, Anaconda thus established that the committee had sufficient evidence before it to conclude that plaintiff was terminated for cause so that its decision was not arbitrary.[7] Plaintiff failed to set forth specific facts by affidavits or otherwise, as required by Fed.R.Civ.P. 56(e), to controvert Anaconda's showing that it did not act arbitrarily in concluding that plaintiff was terminated for cause. "[O]nce a properly supported motion for summary judgment is made, the opposing party may not merely rest on the allegations in the complaint and must respond with some factual showing of the existence of a genuine issue of material fact." Brown v. Parker-Hannifin Corp., 746 F.2d 1407, 1412 (10th Cir.1984); see also Brown v. Chaffee, 612 F.2d 497, 504 (10th Cir.1979) (once prima facie case is made, party opposing summary judgment cannot rely on pleading alone, but by affidavit or otherwise must show there is a genuine issue of fact). Because plaintiff never controverted Anaconda's showing that the committee had sufficient evidence to conclude that plaintiff was terminated for cause, summary judgment for defendant on Count I was proper unless plaintiff's failure in this regard is excusable.
 
 
 37
 On appeal plaintiff does argue that because the "committee decision ha[d] been made unilaterally and without any opportunity for the plaintiff to provide his side of the story or any input, [it] is by definition arbitrary, in bad faith, capricious or fraudulent." Appellant's Brief 12. Plaintiff further argues that in his deposition he did not say that the committee decision was made in bad faith or not made in bad faith; plaintiff "stated that he did not know the basis for his termination much less the basis for the decision of the committee." Appellant's Brief 18. Plaintiff also complains that summary judgment was entered before discovery was complete. Appellant's Brief 2, 7. This raises the issue, at least implicitly, as to whether summary judgment on Count I was improper because facts necessary to counter Anaconda's affidavits were peculiarly within the knowledge of the non-moving party. After considering these arguments, however, we must reject them.
 
 
 38
 There is no requirement in Rule 56, Fed.R.Civ.P., that summary judgment not be entered until discovery is complete. See, e.g., Brown v. Chaffee, 612 F.2d 497, 504 (10th Cir.1979); see also Miller v. United States, 710 F.2d 656, 666 (10th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983); Gray v. Udevitz, 656 F.2d 588, 592 (10th Cir.1981). However, sufficient time for discovery is especially important when relevant facts are exclusively in the control of the opposing party. See 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, Sec. 2741, at 545 (1983); see also Walters v. City of Ocean Springs, 626 F.2d 1317, 1321 (5th Cir.1980). Moreover, we have held that "summary judgment should not be based on the deposition or affidavit of an interested party ... as to the facts known only to him--a situation where demeanor evidence might serve as real evidence to persuade a trier of fact to reject his testimony." Madison v. Deseret Livestock Co., 574 F.2d 1027, 1037 (10th Cir.1978); see National Aviation Underwriters, Inc. v. Altus Flying Service, Inc., 555 F.2d 778, 784 (10th Cir.1977); see also Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 756 F.2d 230, 236 (2d Cir.1985); Schoenbaum v. Firstbrook, 405 F.2d 215, 218 (2d Cir.1968) (en banc), cert. denied, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969).[8]
 
 
 39
 When a party opposing a motion for summary judgment is unable to present specific facts in opposition to the motion, Fed.R.Civ.P. 56(f) makes it possible for a party to avoid summary judgment at that time by filing an affidavit explaining why he cannot present specific facts in response to the motion; upon the filing of a 56(f) affidavit, the district court has the discretion to order a continuance to permit additional discovery or the filing of affidavits. E.g., Guild Trust v. Union Pacific Land Resources Corp., 682 F.2d 208, 211 (10th Cir.1982); Gray v. Udevitz, 656 F.2d 588, 592 (10th Cir.1981).[9] Plaintiff here did not file a 56(f) affidavit. "[A] party opposing summary judgment is required to provide 'specific facts' showing there is a genuine issue for trial, or explain why he cannot immediately do so. See Fed.R.Civ.P. 56(e) & (f)." Udevitz, 656 F.2d at 592 (emphasis added).[10] Plaintiff did not present specific facts in opposition to Anaconda's motion, or explain why he could not do so.
 
 
 40
 Even if plaintiff had filed a Rule 56(f) affidavit stating that he could not counter Anaconda's affidavits because the necessary evidence was peculiarly within Anaconda's knowledge, this alone would be insufficient to defeat Anaconda's summary judgment motion. Our court has recently stated that "a mere assertion 'that the evidence supporting a [party's] allegation is in the hands of the [opposing party] is insufficient to justify a denial of a motion for summary judgment under Rule 56(f).' " Patty Precision v. Brown & Sharpe Mfg. Co., 742 F.2d 1260, 1264 (10th Cir.1984) (brackets added by Patty Precision ) (quoting Contemporary Mission, Inc. v. United States Postal Service, 648 F.2d 97, 107 (2d Cir.1981)). "[T]he party filing the affidavit must show how additional time will enable him to rebut movant's allegations of no genuine issue of fact." Patty Precision, 742 F.2d at 1264.[11]
 
 
 41
 Here the controlling question was not one within the exclusive knowledge of Mr. White on facts known only to him. It is true that his knowledge of his reasons for plaintiff's discharge may be of that character. But the issue here is whether evidence put before the plan committee was such that its ruling was not arbitrary, in bad faith, or fraudulent. The materials supporting Anaconda's summary judgment motion made a substantial showing on that issue in Anaconda's favor, through the affidavit of Read and the written memorandum of White, and they were unopposed.
 
 
 42
 In sum, we hold that the district court did not err in granting Anaconda summary judgment on Count I.
 
 B. Wages Under Kansas Law (Count IV)
 
 43
 In Count IV, Plaintiff argues that benefits under both the stock option plan and the savings fund plan are "wages" under Kansas law. In that Count, plaintiff claims the right to benefits under the stock option plan pursuant to the Kansas wage statutes. He also seeks penalties under these statutes for delay in receiving those stock option benefits and penalties for delay in receiving benefits under the savings fund plan, which savings fund benefits were ultimately paid after a remand to the Committee and its ruling that he was entitled to those benefits under the savings fund plan as a contractual right. Plaintiff requests that the case be remanded to determine if Anaconda's failure to pay both the stock option and savings fund plan benefits was willful, thereby entitling him to statutory penalties. Id.
 
 
 44
 Under Kansas law wages are defined as including "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis less authorized withholding and deductions." Kan.Stat.Ann. Sec. 44-313(c) (1981); "In regulations adopted by the Department of Human Resources 'or other basis' [under Sec. 44-313(c) ] is defined as:
 
 
 45
 '... all agreed compensation for services, including, but not limited to, profit sharing and fringe benefits for which the conditions required for entitlement, eligibility, accrual or earning have been met by the employee. Conditions subsequent to such entitlement, eligibility, accrual or earning resulting in a forfeiture or loss of such earned wage shall be ineffective and unenforceable.' K.A.R. 49-20-1F."Sweet v. Stormont Vail Regional Medical Center, 231 Kan. 604, 647 P.2d 1274, 1277 (1982).
 
 
 46
 When an employee quits, resigns or is terminated, "the employer shall pay the employee's earned wages not later than the next regular payday." Kan.Stat.Ann. Sec. 44-315(a) (1981). "If an employer knowingly fails to pay an employee wages as required" under Sec. 44-315(a) the employer is liable for statutorily specified penalties "except that such penalty shall apply only in the event of a willful violation." Kan.Stat.Ann. Sec. 44-315(b) (1981).
 
 
 47
 The district judge rejected plaintiff's claims that benefits under the stock option and savings fund plans were wages under Kansas law. As noted, he reasoned that "these types of deferred benefits or fringe benefits were not contemplated by the [statute's] drafters" to be included in the term wages. II R. 244. To obtain benefits under each plan, the employee had "to exercise an option to receive any benefits ..., that is, either purchase stock or contribute to the savings fund." II R. 244. The district court concluded that such benefits did not "fit the statutory definition of wages" in Sec. 44-313(c). II R. 244.
 
 
 48
 The Kansas Supreme Court in construing the Kansas wage statutes has stated that "[i]n determining the rights which occur under an employment contract, the entitlement thereto or eligibility therefor, the terms of the contract control so long as they are not unreasonable or illegal." Weinzirl v. Wells Group, Inc., 234 Kan. 1016, 677 P.2d 1004, 1008 (1984); see Sweet v. Stormont Vail Regional Medical Center, 231 Kan. 604, 647 P.2d 1274, 1275 p 1 (1982) (syllabus by the court); see also Mid America Aerospace, Inc. v. Department of Human Resources, 10 Kan.App.2d 144, 694 P.2d 1321, 1324 (1985). Kansas law permits an employer to impose a condition precedent on its obligation to pay an employee for a benefit; however, once an employee's right to a benefit becomes absolute, a condition subsequent cannot impose a forfeiture. See, e.g., Weinzirl v. Wells Group Inc., 234 Kan. 1016, 677 P.2d 1004, 1008-09 (1984); Sweet, 647 P.2d 1274, 1279-80; Morton Buildings, Inc. v. Department of Human Resources, 10 Kan.App.2d 197, 695 P.2d 450, 453 (1985); Yuille v. Pester Marketing Co., 9 Kan.App.2d 464, 682 P.2d 676, 681 (1984). A court's task to determine whether a benefit is an earned wage under Kansas law is "one of deciding whether the documents drafted by the employer place a condition precedent on entitlement to the benefit or whether they attempt to impose a forfeiture." Morton Buildings, 695 P.2d at 453.
 
 
 49
 Kansas courts have defined a condition precedent under the Kansas wage statutes as:
 
 
 50
 something that is agreed must happen or be performed before a right can occur to enforce the main contract. It is one without the performance of which the contract entered into between the parties cannot be enforced. A condition precedent requires the performance of some act or happening of some event after the terms of the contract, including the condition precedent, have been agreed on before the contract shall take effect.
 
 
 51
 Weinzirl, 677 P.2d at, 1008; see also Sweet, 647 P.2d at 1280; Morton Buildings, 695 P.2d at 453.
 
 
 52
 For example, in Sweet the Kansas Supreme Court held that a provision in the employment contract requiring an employee to give two weeks' notice before quitting in order to be paid for unused vacation time was a valid condition precedent. The employee's failure to comply with the condition precedent by giving two weeks' notice "negate[d] any determination that such accrued vacation time constitute[d] 'earned wages' " under Sec. 44-315(a). Sweet, 647 P.2d at 1281. In Sweet the court made clear that "there is nothing prohibiting the employer from conditioning any such lump sum payment [for unusued vacation time] on the giving of notice, or length of service or any other term which is not unconscionable." Id. at 1279-80.
 
 
 53
 The right to receive benefits under the stock option plan and savings fund plans is not absolute. Both are subject to a condition precedent. The district court's statement that "[i]n both cases, the employee had to exercise an option in order to receive any benefits under the plans" dovetails with our conclusion that such benefits are subject to a condition precedent. II R. 244. See Weinzirl, 677 P.2d at 1009 (finding of hearing officer and trial court that claimant's right to commissions was not subject to a condition precedent is supported by substantial evidence and cannot be set aside on review).
 
 1. The stock option benefits
 
 54
 The stock option agreement plainly contemplates that an employee comply with a condition precedent before he will receive benefits under the plan. The agreement provides:
 
 
 55
 You must remain in the employ of the Company or its subsidiaries for one year after the Granting Date to be eligible to exercise this option except as provided in Paragraph 5. If after one year, your employment with the company or a subsidiary is terminated for any reason other than by death, this option may be exercised only within three months from the date of such termination of employment, but in no event after ten years from the Granting Date. If, however, you are dismissed from the employ of the company, or a subsidiary for cause, of which the committee shall be the sole judge, this option shall forthwith expire.
 
 
 56
 I R. 15.
 
 
 57
 If an employee does nothing, he will not receive benefits under the stock option plan. His right to such benefits is not absolute. He must satisfy the condition precedent of exercising the option when he is eligible to do so. Under the agreement, for an employee who is no longer working for the employer to obtain benefits he must exercise the option within three months of termination, and before termination he must have continued to perform adequately at his job so as not to be terminated for cause.
 
 
 58
 In the case at bar, when plaintiff attempted to exercise his option, he was not eligible to exercise it. Plaintiff had been discharged for failure to perform adequately at his job and was dismissed for cause.[12] Thus, plaintiff's rights to receive benefits under the stock option plan were subject to a condition precedent, and plaintiff failed to comply with it. As Sweet noted, nothing prohibits conditioning a lump sum payment for a benefit on the giving of notice, length of service, or any other term which is not unconscionable. 647 P.2d at 1279-80.
 
 
 59
 The above condition precedent is not unconscionable. Kansas courts have upheld similar conditions. In Morton Buildings, Inc. v. Department of Human Resources, 10 Kan.App.2d 197, 695 P.2d 450 (1985), employees brought a claim for profit sharing benefits under Sec. 44-315(a). The employer had terminated the employees in January, and they sought their share of profits for the previous year. Id. 695 P.2d at 452. The employer had refused to pay them because a condition for receiving a share of the profits was being on the employer's payroll on the March distribution date, and having been terminated in January, the employees did not satisfy this condition. The court held that because the employees did not satisfy this condition precedent, the profit sharing benefit was not an earned wage even though the employer had fired the employee before the distribution date. 695 P.2d at 454.
 
 
 60
 In Richardson v. St. Mary Hospital, under the employment contract an employee accrued "earned time" in proportion to the number of hours worked. 6 Kan.App.2d 238, 627 P.2d 1143, 1145 (1981). The employee could then use "earned time" for paid sick leave and holidays. A woman who voluntarily left the hospital's employ was paid for 50% of her "earned time" pursuant to the contract, and she brought suit for the remaining 50%. The contract provided that:
 
 
 61
 Employees who are terminating ... who have unused "Earned Time" as of their resignation or last day worked, will be paid for unused "Earned Time" according to the following percentages:
 
 50% for up to five (5) years of service
 
 62
 60% for five (5) to ten (10) years of service
 
 
 63
 75% for over ten (10) years of service.
 
 
 64
 Id. 627 P.2d at 1145.
 
 
 65
 The court held that a condition precedent to being paid for "earned time" was continued employment. Id. at 1146. The court recognized that the language of the contract "bordere[d] on being a condition subsequent." Id. However, the court concluded that the right to payment for "earned time" was absolute during employment, and the right to be paid for unused "earned time" after termination was "governed by the employment contract and [was] not in violation of existing statutes and regulations." Id.[13]
 
 
 66
 In sum, the district court properly held that the stock option benefits were not "wages" under the Kansas wage statutes.
 
 2. The savings fund plan benefits
 
 67
 Lastly, we turn to the claim for penalties under the Kansas wage statutes for delay in payment of some of the savings fund plan benefits to plaintiff. We reject this statutory claim, concluding that the benefits under the savings fund plan also are not "wages" under the Kansas wage statutes because they were subject to a valid condition precedent.
 
 
 68
 As the district court stated, in connection with both the stock option plan and the savings fund plan, "the employee had to exercise an option to receive any benefits under the plans, that is, either purchase stock or contribute to the savings fund." He concluded that such benefits did not fit the statutory definition of wages. II R. 244.
 
 
 69
 We agree with this holding. Under the authorities analyzed earlier, we are persuaded that the requirement of contributing to the savings fund plan in order to be entitled to the benefits was a valid condition precedent under Kansas law. Hence, the benefits whose payment was delayed were not "wages" under the Kansas wage statutes, and the plaintiff is not entitled to the statutory penalties for the delay in their payment.
 
 III
 
 70
 In sum, we hold that summary judgment for Anaconda on Count I was proper. As to Count IV, the district court also correctly held that benefits under the stock option and savings fund plans were not wages under the Kansas wage statutes, and therefore plaintiff was not entitled to any stock option benefits, or to any penalties for delay in payment of either stock option or savings fund plan benefits. Accordingly the judgment is
 
 
 71
 AFFIRMED.
 
 
 
 [1]
 Plaintiff was given leave to file a response to the Administrative Committee's report within ten days, to which Anaconda could reply. II R. 244. The Administrative Committee determined that plaintiff was entitled to benefits under the savings plan, and the district court granted plaintiff's motion for summary judgment as to cash dividends paid on 184.76284 shares of ARCO stock from May 1, 1980 until his receipt of the stock, plus interest. II R. 336. The district court rejected plaintiff's claim for interest on the value of the stock or the difference in the value of the stock at the time of receipt and its highest value after plaintiff's termination. II R. 331-33. The court also rejected plaintiff's claim for attorneys' fees. II R. 334-36
 
 
 [2]
 The Due Process Clauses of the Fifth and Fourteenth Amendments, of course, are a constraint only on state or federal governmental action not on non-governmental individual action. See generally J. Nowak, R. Rotunda & J. Young, Constitutional Law 497 (1983). Plaintiff appears to recognize this. See Appellant's Brief 9. As we understand plaintiff's argument, he argues that public policy should require that the equivalent of due process safeguards act as a constraint on his employer's actions in denying him stock option benefits
 
 
 [3]
 In General Electric a woman sought to obtain benefits under a pension plan maintained by her employer. The pension board had denied her claim for disability benefits. Under the plan, the decision of the pension board as to the existence of disability and as to the plan's administration, interpretation, and application was final and conclusive. 574 S.W.2d at 315. After a full trial, a jury returned a verdict that the woman was disabled within the meaning of the pension plan and that the pension board's decision denying her benefits had been arbitrary, in bad faith or fraudulent. Id
 We do not believe that General Electric would support de novo review of the Board's ruling here. In General Electric the Kentucky Court dealt with two main issues. It held that when there is a question respecting the fairness or impartiality of the proceeding before the board, the employee could not be confined to the record before the board. Such evidence of unfairness was considered there and held to show that General Electric did not deal fairly with the plaintiff "in the spirit that would justify enforcing the provision of the plan making the decision of the pension board final and conclusive." Id. at 321. Such evidence included a showing of delay in the board's proceedings and lack of notice to the plaintiff of her right to appellate procedures.
 Further, the Kentucky Court recognized that most commonly the decisions of the pension board are conclusive unless arbitrary, fraudulent, or in bad faith. Id. at 316. Viewed in this light, the court held that the board's decision was supported by substantial evidence. Id. at 318-19. However, since the plaintiff had established the unfairness of the proceedings before the board, the disability question was considered in light of the trial record including evidence not before the board, and the court held that it supported the jury verdict that plaintiff was disabled. Id. at 322.
 In the instant case, the plaintiff did not offer evidence opposing the summary judgment which might have established that the Anaconda board proceedings were unfair or partial, nor did he explain any inability to do so when responding to the summary judgment motion. Hence the district court correctly distinguished General Electric and granted the summary judgment.
 
 
 [4]
 We cannot agree with the district court on this point. We note that in the pre-trial order one of the issues of law was whether defendant acted in bad faith. II R. 224. We also note that plaintiff argues on appeal that defendant acted in bad faith because the plan committee never afforded him due process protections before denying his claim for benefits. Appellant's Brief 19-20
 We feel that plaintiff did allege bad faith. Nevertheless we believe that summary judgment on Count I was proper for defendant because when a motion for summary judgment with supporting affidavits is pending before a court, the adverse party "may not rest upon the mere allegations or denials of his pleadings." Fed.R.Civ.P. 56(e) (emphasis added). The adverse party "must set forth specific facts showing that there is a genuine issue for trial" or explain why he cannot do so; otherwise summary judgment, if appropriate, shall be entered against him. Id.
 As we explain later, plaintiff did not set forth specific facts to show that there was a genuine issue for trial as to defendant's bad faith, arbitrainess, or fraudulent behavior. Nor did he file a 56(f), Fed.R.Civ.P., affidavit explaining why he could not so respond. In such a case, summary judgment for defendant on Count I was proper.
 
 
 [5]
 The district court's definition of "cause" is consistent with the definition of virtually identical terms under Kansas law. See, e.g., Gillett v. Unified School District No. 276, 227 Kan. 71, 605 P.2d 105, 110 (1980) ("[A] tenured teacher may be terminated or nonrenewed only if good cause is shown, including any ground which is put forward by the school board in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the school board's task of building up and maintaining an efficient school system."); Swezey v. State Department of Social and Rehabilitation Services, 1 Kan.App.2d 94, 562 P.2d 117, 118 p 6 (1977) (syllabus by the court) ("Legal cause for dismissal exists if the facts disclose the employees' conduct is of a substantial nature and directly impairs the efficiency of the public service, but there must be a real and substantial relation between the employee's conduct and the efficient operation of the public service; otherwise, legal cause is not present.")
 
 
 [6]
 William M. Read was the Senior Vice President for Employee Relations of Atlantic Richfield Company. I R. 94
 
 
 [7]
 We note that there is no allegation that White fabricated the reasons for plaintiff's termination in order to deny plaintiff stock option benefits. In this regard the district court pointed out that "[t]here is also ample evidence in the record to dispel any suspicion that the memorandum was prepared to set up a pretextual termination 'for cause' after the facts." II R. 235. In his deposition, plaintiff testified that he knew that White was disatisfied with plaintiff's work. III R. 90. Plaintiff also recognized that there was animosity between himself and White. III R. 90-91. Furthermore, in January of 1979, White evaluated plaintiff's performance during the latter half of 1978 as inadequate. I R. 98
 
 
 [8]
 Commentators generally recognize that courts should be cautious in granting summary judgment when relevant facts are peculiarly within the knowledge of the adverse party. See, e.g., 6 part 2 J. Moore & J. Wicker, Moore's Federal Practice p 56.24, at 56-1434--56-1436 (2d ed. 1985); 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2741, at 545-48 (1983); Louis, Federal Summary Judgment Doctrine: A Critical Analysis, 83 Yale L.J. 745, 749 n. 19 (1974). But cf. Sonenshein, State of Mind and Credibility in the Summary Judgment Context: A Better Approach, 78 Nw.U.L.Rev. 774, 792 & n. 76 (1983)
 
 
 [9]
 Fed.R.Civ.P. 56(f) provides:
 (f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
 
 
 [10]
 In the absence of a Rule 56(f) affidavit, other courts have generally upheld the grant of summary judgment before the completion of discovery. E.g., Shavrnoch v. Clark Oil and Refining Corp., 726 F.2d 291, 294 (6th Cir.1984) (absent 56(f) affidavit, district court did not abuse its discretion by granting movant's summary judgment motion prior to completion of non movant's discovery); Mid-South Grizzlies v. National Football League, 720 F.2d 772, 780 & n. 4 (3d Cir.1983) (most courts agree that filing an affidavit is necessary for preservation of a Rule 56(f) contention that summary judgment should be denied pending further discovery), cert. denied, --- U.S. ----, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984); Over The Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 821 (1st Cir.1980) (where party never requested court to postpone summary judgment hearing as it might have under 56(f), absence of discovery in no way precludes summary judgment); Thi-Hawaii, Inc. v. First Commerce Financial Corp., 627 F.2d 991, 994 (9th Cir.1980) (district court did not err in granting summary judgment prior to any discovery where non moving party failed to move for a continuance under 56(f)); see also Adickes v. Kress & Co., 398 U.S. 144, 160-61, 90 S.Ct. 1598, 1609-10, 26 L.Ed.2d 142 (1970)
 Rather than seeking a continuance of the summary judgment motion under Rule 56(f) on the grounds that more time for discovery was needed because the information necessary to defeat the motion was exclusively known to Anaconda, plaintiff appears to have acquiesced in the district court's making a ruling on the summary judgment motion prior to the completion of discovery. Before the trial court, Anaconda sought to avoid having to respond to plaintiff's second interrogatories and second request for admissions until after the court ruled on its various motions. Anaconda apparently took the position that if the court ruled in Anaconda's favor, that would end the litigation; therefore, requiring Anaconda to respond to plaintiff's discovery requests before the district court's ruling would be an "unnecessary burden." See I R. 70.
 Plaintiff initially opposed a delay in Anaconda's response to discovery requests and filed a motion to compel. I R. 57. After both parties had filed their respective motions for summary judgment, a pretrial conference was held. II R. 219. The record reflects that on February 25, 1981 during the pretrial conference at the request of the parties, the court continued plaintiff's motion to compel. II R. 216. The district court entered summary judgment the following October. II R. 244. There is no indication in the record that plaintiff sought to compel further discovery in the approximately seven months between the time plaintiff agreed to have its motion to compel continued and the time the court granted Anaconda's summary judgment motion on Count I. We note in passing that this circuit has held that the "necessity of discovery before summary judgment cannot be raised on appeal if no complaint was made in the trial court." Brown v. Chaffee, 612 F.2d 497, 505 (10th Cir.1979); see also Adkins v. E.I. Du Pont De Nemours & Co., 181 F.2d 641, 642 (10th Cir.), cert. denied, 340 U.S. 835 (1950).
 
 
 [11]
 In a case strikingly similar to the case at bar, the Seventh Circuit reached a similar result. In Foster v. General Motors Corp., 191 F.2d 907 (7th Cir.1951), cert. denied, 343 U.S. 906 (1952), employees sued their employer for vacation pay. The collective bargaining agreement precluded recovery. Id. at 910. The district court granted defendant's motion for summary judgment and rejected the plaintiffs' argument that they were entitled to a hearing on the issue of discrimination and bad faith in the negotiation of the agreement. Id. at 911. In upholding the grant of summary judgment the Seventh Circuit found it important that plaintiffs had not complied with Rule 56(f). Id. at 912
 
 
 [12]
 We need not decide whether plaintiff was in fact dismissed for cause. As we have explained, Anaconda's motion for summary judgment established that the committee had sufficient evidence before it to conclude that plaintiff was dismissed for cause, and given our limited scope of review of the committee's decision, we cannot disturb it
 
 
 [13]
 The Kansas Supreme Court appears to have approved of the holding in Richardson. In Sweet the Kansas Supreme Court discussed Richardson and Lindstrom v. St. Francis Hospital & Medical Center, Inc., 6 Kan.App.2d 948, 636 P.2d 231 (Kan.Ct.App.1981). The Kansas Supreme Court noted that the two cases reached opposite results and that the attempt to distinguish them was unpersuasive. 647 P.2d at 1278, 1279. In announcing its decision, the Kansas Supreme Court stated that "[t]o the extent that the opinion of the Court of Appeals in Richardson and our decision herein are inconsistent with the holdings in Lindstrom that case is disapproved." Id. at 1281