790 F.2d 828
 Irving PASTERNAK, d/b/a Shar-Alan Oil Company; Harvey
Alpert; Leland Alpert; Ted Alpert; Babl Resources, Inc.;
Ferrovanadium Corporation, N.L.; Steven Chotin; Robin
Chotin; Steven Cohen; Jo Ellen Cohen; East Side Auto and
Investment Company; Richard Helmick; Abraham Michelson;
Chery Michelson; Kenneth Perry; Ricki Perry; Phillip
Rand; Estate of Paul Rothman, by Doris Rothman, Personal
Representative; Allen G. Pasternak; and Richard M. Wanger,
Plaintiffs-Appellants,
v.
LEAR PETROLEUM EXPLORATION, INC., Texas Oil & Gas
Corporation, Flag-Redfern Oil Company, and
Universal Resources Corporation,
Defendants-Appellees.
 No. 84-1237.
 United States Court of Appeals,
Tenth Circuit.
 May 8, 1986.
 
 Richard R. Helmick, Denver, Colo. (Dickson M. Saunders and James P. McCann of Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, Oklahoma, on briefs), for plaintiffs-appellants.
 William D. Curlee of Lytle, Soule, Curlee, Harrington, Chandler & Van Dyke, Oklahoma City, Okl., for defendant-appellee Texas Oil & Gas Corp.
 Joseph H. Bocock (Philip D. Hart, with him on brief), Oklahoma City, Okl., for defendant-appellee Flag-Redfern Oil Co.
 Arlen E. Fielden of Crowe & Dunlevy, Oklahoma City, Okl., on brief, for defendant-appellee Lear Petroleum Exploration, Inc.
 Kenneth N. McKinney and Larry S. Kaplan of McKinney, Stringer & Webster, P.C., Oklahoma City, Okl., on brief, for defendant-appellee Universal Resources Corp.
 Before BARRETT, MOORE and ANDERSON, Circuit Judges.
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 Shar-Alan Oil Company (Shar-Alan) filed suit in Oklahoma state court to quiet title to two oil and gas wells in Major County, Oklahoma. The case was removed to the United States District Court for the Western District of Oklahoma by the defendants, Lear Petroleum Exploration, Inc. (Lear), Flag-Redfern Oil Company (Flag-Redfern), Texas Oil & Gas Corporation (Texas Oil & Gas), and Universal Resources Corporation (URC), who previously entered into a joint operating agreement covering the section of land upon which the wells were located. The companies claim an interest in the wells through a farmout agreement between Lear and Shar-Alan, which they contend is subject to their joint operating agreement. After determining there were no material facts in dispute and that Shar-Alan was bound by the specific terms of the farmout agreement making it subject to the joint operating agreement, the district court granted defendants' motion for summary judgment. The district court subsequently denied Shar-Alan's motion to alter, amend, or vacate its judgment, finding that it was not improperly denied the opportunity to conduct additional discovery and that Shar-Alan could not rely on mutual mistake to avoid the specific terms of the farmout agreement with Lear. Because we conclude the district court did not abuse its discretion in denying Shar-Alan additional opportunity to conduct discovery and did not err in determining that Shar-Alan could not rely on mutual mistake, we affirm the district court's orders.[1]
 
 
 2
 On October 7, 1976, the four defendant companies signed a joint operating agreement covering their interests in Section 23, Township 20 North, Range 13 West, in Major County, Oklahoma, which was previously designated as one drilling and spacing unit by the Oklahoma Corporation Commission. At that time, the defendants held the rights to drill for oil and gas in the entire section. By virtue of the joint operating agreement, the defendants agreed to participate, according to an agreed ratio of interests and for a specified period of time, in all oil and gas produced from Section 23. In December 1976, URC, as the operator, drilled and completed a producing well, known as Keck # 1, in the northeast corner of the southwest quarter of Section 23.
 
 
 3
 Of primary importance to this case are interests held by some of the defendant companies in the northeast quarter of Section 23. On January 1, 1979, the Oklahoma Corporation Commission despaced Section 23 from one 640-acre drilling and spacing unit to eight 80-acre drilling and spacing units. At that time, Lear was lessee to 60 acres, and Flag-Redfern owned the mineral interest in another 20 acres in the northeast quarter. Both interests were acquired prior to the execution of the joint operating agreement. By 1979, the defendants had apparently divested themselves of other leasehold interests originally held in the remaining acreage in the northeast quarter. On July 31, 1979, Flag-Redfern leased its 20 acres to Western Products Corporation (WPC), who was lessee to an additional 80 mineral acres in the northeast quarter. Shar-Alan then purchased the leases covering 100 acres from WPC. Shar-Alan subsequently became the assignee to the remaining 60 acres in the northeast quarter through the farmout agreement with Lear.
 
 
 4
 Shar-Alan drilled the first well in the northeast quarter of Section 23 prior to the execution of its farmout agreement with Lear. Shar-Alan contends it subsequently completed that well and a second well before it received any notification of defendants' claimed interest in the wells. Defendants based their claim on the contention that paragraph X(4) of the farmout agreement made that agreement expressly subject to the existing joint operating agreement.[2] Shar-Alan consistently refused to recognize the "subject to" provision of the farmout agreement.
 
 
 5
 Shar-Alan filed suit in Oklahoma district court on February 16, 1982. Defendants promptly removed the case to the United States District Court. Thereafter, discovery was undertaken by both sides. Based upon depositions, URC filed a motion for summary judgment on February 3, 1983, in which it contended that Shar-Alan could not avoid specific language in the farmout agreement permitting defendants to participate in the two wells drilled by Shar-Alan. Lear, Flag-Redfern, and Texas Oil & Gas joined in the motion. Discovery continued while the motion for summary judgment was pending. Shar-Alan scheduled depositions of defendants' officers for August 15-17, 1983, and defendants agreed to deliver material to Shar-Alan on August 10, 1983, in response to Shar-Alan's request for production of documents.
 
 
 6
 On August 8, 1983, the district court granted summary judgment in favor of defendants, upholding their claim of an interest in the two wells drilled by Shar-Alan on the ground the farmout agreement was subject to the joint operating agreement. The district court relied on paragraph X(4) of the farmout agreement which provides:
 
 
 7
 Shar-Alan agrees to observe, perform and comply with all of the conditions and covenants, express or implied, of the oil and gas leases subject to this agreement and of any unitization agreement, joint operating agreement, unit operating agreement or other instrument to which said leases are subject.
 
 
 8
 After concluding the provision was unambiguous and that Shar-Alan had not disputed defendants' statement of the facts presented in their motion, the district court rejected Shar-Alan's argument that it should not be bound by paragraph X(4) because it was unaware of the inclusion of the provision in the farmout agreement, as well as the existence of the joint operating agreement. The court found that while Shar-Alan lacked actual knowledge of the joint operating agreement to which Lear was a party, it "had sufficient facts and/or sufficient opportunity to ascertain additional facts" to put it on notice of the existence of the agreement. The court also determined that the failure of Shar-Alan personnel involved in negotiations with Lear to read the farmout agreement before signing it did not alter the binding effect of paragraph X(4).
 
 
 9
 Shar-Alan moved, pursuant to Fed.R.Civ.P. 59(e), to alter, vacate, or amend the district court's order, contending that summary judgment was improper because there were material facts in dispute regarding the parties' intent with respect to paragraph X(4) and regarding the possibility of a mutually mistaken belief that no agreement adversely affecting Shar-Alan's rights existed. Shar-Alan also argued that the court's order granting summary judgment was premature because Shar-Alan was not permitted to conduct previously scheduled discovery.
 
 
 10
 The district court denied Shar-Alan's motion. It found that the scheduled discovery did not justify setting aside the court's order granting summary judgment because Shar-Alan failed to notify the court that additional discovery was needed pursuant to Fed.R.Civ.P. 56(f). The district court rejected Shar-Alan's contention that questions of fact remained with respect to the parties' intent in executing the farmout agreement. After reiterating its previous findings that paragraph X(4) was unambiguous, that Shar-Alan personnel failed to read the farmout agreement, and that Shar-Alan had constructive notice of the existence of the joint operating agreement, the court concluded that Shar-Alan could not rely on mutual mistake to avoid the terms of the farmout agreement. Shar-Alan appealed.
 
 I.
 
 11
 Shar-Alan contends the district court abused its discretion in refusing to reconsider and vacate its grant of summary judgment in order to permit additional discovery to take place. While Shar-Alan admits it did not notify the court of the necessity for additional discovery in compliance with Rule 56(f), it argues the cooperation of the parties in conducting and scheduling discovery while the motion was pending, along with Shar-Alan's brief in opposition to the motion for summary judgment, sufficiently informed the district court that counsel for all of the parties did not consider the summary judgment motion effectively submitted. Shar-Alan concedes that filing an affidavit pursuant to Fed.R.Civ.P. 56(f) is the preferred method for delaying disposition of a summary judgment motion in order to obtain additional discovery, but it argues that strict compliance with the rule is not always mandated where the court is otherwise apprised of the need for discovery.
 
 
 12
 Where a movant has met the initial burden required for a grant of summary judgment, the opposing party must either establish the existence of a triable issue of fact under Fed.R.Civ.P. 56(e) or explain why he cannot present facts to justify his opposition under Rule 56(f). Weir v. Anaconda Co., 773 F.2d 1073, 1082 (10th Cir.1985); Korf v. Ball State University, 726 F.2d 1222, 1230 (7th Cir.1984); Gray v. Udevitz, 656 F.2d 588, 592 (10th Cir.1981). Filing an affidavit under Rule 56(f) explaining the need for additional discovery invokes the court's discretion in ordering a continuance. Weir, 773 F.2d at 1082; Patty Precision v. Brown & Sharpe Manufacturing Co., 742 F.2d 1260, 1264 (10th Cir.1984). Where a party opposing summary judgment and seeking a continuance pending completion of discovery fails to take advantage of the shelter provided by Rule 56(f) by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate. Shavrnoch v. Clark Oil and Refining Corp., 726 F.2d 291, 294 (6th Cir.1984); Thi-Hawaii, Inc. v. First Commerce Financial Corp., 627 F.2d 991, 994 (9th Cir.1980).
 
 
 13
 Shar-Alan did not file an affidavit nor did it otherwise specifically notify the district court of the necessity of conducting additional discovery to permit it to oppose summary judgment. We agree with the district court that the introductory phrase, "Although discovery has not yet been completed ...," included in Shar-Alan's brief in opposition to summary judgment, was not adequate and sufficient notice of the requirement for additional time under Rule 56(f) to respond to the motion for summary judgment. Discovery had been ongoing for over a year, and Shar-Alan did in fact respond to the motion for summary judgment with a brief and exhibits. The protection afforded by Rule 56(f) is an alternative to a response in opposition to summary judgment under 56(e) and is designed to safeguard against a premature or improvident grant of summary judgment. 10A Wright, Miller, & Kane, Federal Practice and Procedure Sec. 2740 (1983). Rule 56(f) may not be invoked by the mere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable; the opposing party must demonstrate "how additional time will enable him to rebut movant's allegations of no genuine issue of fact." Weir, 773 F.2d at 1083, quoting Patty Precision, 742 F.2d at 1264. Even if we ignore the fact that Shar-Alan failed to file an affidavit as mandated by Rule 56(f), Shar-Alan's casual reference to the existence of ongoing discovery falls far short of showing how the desired time would enable it to meet its burden in opposing summary judgment. Therefore, we will not disturb the district court's discretion in refusing to vacate its grant of summary judgment.
 
 II.
 A.
 
 14
 Shar-Alan argues that the existence of disputes regarding material facts precluded the district court's grant of summary judgment for the defendant companies. It first contends that when paragraph 24 of the joint operating agreement between the companies is read in conjunction with the fact that the companies divested themselves of certain interests in the northeast quarter of Section 23, the inference that Shar-Alan's interest is not subject to the joint operating agreement is raised. Shar-Alan urges the inference is sufficient to defeat a motion for summary judgment.
 
 
 15
 Paragraph 24 of the joint operating agreement reads, in pertinent part:
 
 
 16
 The leases covered by this agreement, in so far as they embrace acreage in the Unit Area, shall not be surrendered in whole or in part unless all parties consent.
 
 
 17
 However, should any party desire to surrender its interest in any lease or in any portion thereof, and other parties not agree or consent, the party desiring to surrender shall assign, without express or implied warranty of title, all of its interest in such lease, or portion thereof, and any well, material and equipment which may be located thereon and any rights in production thereafter secured, to the parties not desiring to surrender it....
 
 
 18
 Any assignment or surrender made under this provision shall not reduce or change the assignors' or surrendering parties' interest, as it was immediately before the assignment, and the balance of the Unit Area; and the acreage assigned or surrendered, and subsequent operations thereon, shall not thereafter be subject to the terms and provisions of this agreement.
 
 
 19
 Apparently, the defendant companies, who at the time the joint operating agreement was executed held the leasehold interests to the entire northeast quarter of Section 23, subsequently released of record some of the leases as they expired or otherwise divested themselves of some interests in the quarter section. Shar-Alan argues that the divestitures, along with the absence in the record of any indication that Lear acted improperly with respect to the divestiture of its leasehold interest in the acreage acquired by Shar-Alan, raises the inference that the defendants consented to the assignment of Lear's lease. Therefore, Shar-Alan reasons, by operation of the final section of paragraph 24, the acreage on which its two wells are located was no longer subject to the joint operating agreement.
 
 
 20
 The defendants assert that their consent to the assignment of Lear's lease to Shar-Alan was not given. In any event, they contend the farmout from Lear to Shar-Alan was not the surrender of a lease as contemplated by paragraph 24, thus making the paragraph inapplicable. The defendants argue that farmout agreements are controlled by paragraph 31(B), which provides, in pertinent part:
 
 
 21
 Notwithstanding anything herein to the contrary, if any party hereto shall, subsequent to the creation of this agreement, create an overriding royalty, production payment, net proceeds interest, carried interest, or any other burdens out of its working interest (hereinafter called "subsequently created burden") such subsequently created burden shall be specifically made subject to all the terms and provisions of this agreement.
 
 
 22
 They contend that by operation of this paragraph, the burden created by the farmout from Lear to Shar-Alan became subject to the terms of the joint operating agreement.
 
 
 23
 While the parties advance conflicting interpretations of the joint operating agreement with respect to its impact on the interest farmed out to Shar-Alan, the conflict does not create a triable issue of fact sufficient to avoid summary judgment. The record clearly indicates that Lear did not surrender its leasehold interest; it assigned the lease to Shar-Alan, who agreed to conduct exploration and drilling, and retained an overriding royalty. Paragraph 31(B) specifically provides that the subsequent creation of an overriding royalty by a party to the joint operating agreement is subject to all of the terms of the agreement.[3] Shar-Alan does not dispute the defendant companies' contention that paragraph 31(B) properly applies to the farmout agreement with Lear.
 
 
 24
 Even if we assume that paragraph 24, rather than 31(B), controls regarding the rights of the parties after execution of the farmout agreement, Shar-Alan's allegation that there was no indication the companies did not consent to the assignment does not create an issue of material fact sufficient to defeat the motion for summary judgment. The allegation is unsupported by affidavit reciting specific facts within the personal knowledge of the affiant. Conclusory allegations, general denials, or mere argument of an opposing party's case cannot be utilized to avoid summary judgment. Security National Bank v. Belleville Livestock Commission Co., Inc., 619 F.2d 840, 846-47 (10th Cir.1979); Bumgarner v. Joe Brown Co., 376 F.2d 749, 750 (10th Cir.), cert. denied, 389 U.S. 831, 88 S.Ct. 99, 19 L.Ed.2d 90 (1967).
 
 B.
 
 25
 Shar-Alan contends that issues of material fact with respect to the intention of the parties in executing paragraph X(4) of the farmout agreement preclude granting of summary judgment. Specifically, Shar-Alan asserts that the language making the farmout agreement subject to existing joint operating agreements was included as a result of mutual mistake in that neither Shar-Alan nor Lear personnel negotiating the agreement knew of the inclusion of paragraph X(4) or of the joint operating agreement. Irving Pasternak, who signed the farmout agreement on behalf of Shar-Alan, was unaware of the language and could not conclusively state that he read the agreement before signing it. His son, Alan Pasternak, did not read the farmout agreement, nor did Shar-Alan's landman, Richard Hunt. Shar-Alan presented the affidavit of Lawrence Robinette, land manager for Lear, which asserts that he was not aware of the inclusion of paragraph X(4) or of the joint operating agreement signed by Lear to support its contention that the mistake was mutual. Shar-Alan points out that when a written contract fails to express the real intention of the parties, Okla.Stat. tit. 15, Sec. 156 (1981) permits the erroneous parts of the contract to be disregarded.
 
 
 26
 We first note that the Robinette affidavit was not submitted to support Shar-Alan's opposition to the motion for summary judgment. Lawrence Robinette's deposition was part of the discovery Shar-Alan wished to conduct at the time the district court granted summary judgment. Shar-Alan subsequently submitted the affidavit in support of its motion to alter, amend, or vacate the order granting summary judgment. In light of our conclusion that the district court did not abuse its discretion in refusing to reconsider its order in the context of facts uncovered during subsequent discovery, the Robinette affidavit is not properly before us in our consideration of the propriety of the district court's grant of summary judgment.
 
 
 27
 Even if we consider the Robinette affidavit and assume the existence of a mutual mistake, we conclude the district court properly determined that Shar-Alan could not rely on mutual mistake to avoid the terms of paragraph X(4). While Okla.Stat. tit. 15, Sec. 156 (1981) permits reformation of a contract in the event of mistake, Okla.Stat. tit. 15, Sec. 63 (1981) limits mistakes of fact to "mistakes not caused by the neglect of a legal duty on the part of the person making the mistake." We agree with the district court that Shar-Alan's signatory to the farmout agreement had a legal duty to read the document. If he or other Shar-Alan personnel had read the agreement, they would have become aware of the inclusion of paragraph X(4). Their failure to do so cannot now establish the basis for mistake of fact to avoid the written terms of the contract. Under Oklahoma law, to justify a change in a written contract on the ground of mutual mistake, the party seeking reformation must show that he was free of neglect in making the agreement. National Fire Insurance Co. of Hartford v. McCoy, 205 Okl. 511, 239 P.2d 428, 430 (1951); Webster v. Woods, 586 P.2d 337, 339 (Okla.Ct.App.1978). Here, the mistake alleged by Shar-Alan was caused solely by the failure of its representatives to read the farmout agreement. Because Shar-Alan may not rely on mutual mistake, no triable issue exists with respect to the intention of the parties in executing paragraph X(4). Therefore, we conclude the district court did not err in granting summary judgment for the defendant companies.
 
 III.
 
 28
 Shar-Alan contends the Oklahoma Corporation Commission order despacing Section 23 from one 640-acre unit to eight 80-acre units effectively limited the scope of the joint operating agreement to the 80-acre unit on which the defendant companies drilled their initial well, Keck # 1. Shar-Alan reasons that the district court erred in granting summary judgment for the defendant companies because, after despacing, the joint operating agreement did not cover any of the parties' interests in the northeast quarter of Section 23.
 
 
 29
 The Oklahoma Supreme Court has recognized the statutorily prescribed duty of the Oklahoma Corporation Commission to prohibit and control waste and to protect correlative rights to common sources of oil and gas.[4] Samson Resources Co. v. Corporation Commission, 702 P.2d 19, 21 (Okla.1985); Tenneco Oil Co. v. El Paso Natural Gas Co., 687 P.2d 1049, 1052 (Okla.1984). The jurisdiction of the Corporation Commission is limited to the protection of the public interest in orderly development and the prevention of the drilling of unnecessary wells through such devices as the issuance of despacing orders, pooling orders, and fixing allowables. Samson Resources, 702 P.2d at 22. However, the rights to produce a designated quantity of hydrocarbons from a well and owner-operator interests and obligations are the proper subject of private contract, as long as the contract does not cause or grant a license to commit waste or diminish correlative rights. Samson Resources, 702 P.2d at 22; Tenneco Oil, 687 P.2d at 1053.
 
 
 30
 Shar-Alan has not demonstrated that the joint operating agreement in any way encourages waste or allows a party to take more than its share from a common source in derogation of the rights of others. There is no indication that the division of rights and obligations set out in the agreement undermines the public interest served by despacing a 640-acre unit. Consequently, the Corporation Commission despacing order could not limit the scope of the joint operating agreement. Therefore, we conclude the district court did not err in granting summary judgment for the defendants.
 
 
 31
 Affirmed.
 
 
 
 [1]
 All four defendant companies initially joined in this appeal. After oral argument, URC and Shar-Alan stipulated to the dismissal of the appeal with prejudice insofar as it concerns URC and Shar-Alan. Therefore, the district court's orders granting defendants' motion for summary judgment and denying Shar-Alan's motion to alter, amend, or vacate the judgment are affirmed insofar as they concern the remaining three defendant companies and Shar-Alan
 
 
 [2]
 The defendant companies do not claim an interest through the assignment of the lease between WPC and Flag-Redfern to Shar-Alan. Apparently, the lease included a provision prohibiting assignment of the lease without Flag-Redfern's prior written consent. Because Flag-Redfern contends WPC failed to obtain consent for the assignment to Shar-Alan, it considers the assignment ineffective
 
 
 [3]
 Paragraph 24 does not purport to cover assignments of leases by a party to the joint operating agreement to an outside party. The term "assignment," as used in paragraph 24, appears to be limited to the situation in which a party desiring to surrender a lease subject to the joint operating agreement assigns the lease to the other parties to the agreement
 
 
 [4]
 In Kingwood Oil Co. v. Corporation Commission, 396 P.2d 1008, 1010 (Okla.1964), the Oklahoma Supreme Court adopted the following definition of correlative rights:
 The term "correlative rights" has been defined as a convenient method of "indicating that each owner of land in a common source of supply of oil and gas has legal privileges as against other owners of land therein to take oil and gas therefrom by lawful operations conducted on his own land, limited, however, by duties to other owners not to injure the source of supply and by duties not to take an undue proportion of the oil and gas." Summers, Oil and Gas, Vol. 1, Sec. 63.