No. 24,081.

THE SUPERIOR MOTOR COMPANY, *Appellant,* v. THE CHEVROLET MOTOR COMPANY OF KANSAS CITY, *Appellee.*

SYLLABUS BY THE COURT.

CONTRACT—*Selling Agreement Between Motor Manufacturer and Motor Dealer —Provision for Discounts.* The selling agreement between a manufacturer of motor cars and a dealer, effective from August 1, 1919, to July 31, 1920, provided for payment at the end of the year of an additional discount on cars supplied to the dealer, provided the agreement was in force on July 31, 1920, and provided the dealer took the full allotment of cars between October 1, 1919, and March 31, 1920. The agreement further provided .that it might be canceled on five days' written notice by either party. The full allotment of cars referred to was taken, and the agreement was canceled by the manufacturer, by notice dated April 24, 1920. *Held,* the dealer is not entitled to recover the additional discount.

Appeal from Sedgwick district court, division No. 1; THOMAS E. ELCOCK, judge. Opinion filed January 6, 1923. Affirmed.

*William Keith,* and *Charles A. Walsh, jr.,* both of Wichita, for the appellant.

*Chester I. Long, J. D. Houston, Austin M. Cowan, Claude I. Depew, Forest D. Siefkin, James G. Norton,* all of Wichita, and *James E. Goodrich,* of Kansas City, Mo., for the appellee: *John T. Smith,* of New York City, of counsel.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover on a conditional offer of additional discount on sales of motor cars. A demurrer to the petition was sustained, and the plaintiff appeals.

The selling agreement was dated September 20, 1919, but for reasons which need not be stated, was effective between the parties from August 1, 1919, to July 31, 1920. The defendant agreed to supply models which it manufactured to the plaintiff. From September 1, 1919, to July 31, 1920, the plaintiff was to be allowed certain discounts from list prices. The agreement contained the following provision, applicable to specified models:

"In addition to the above discounts, providing your selling agreement is in force July 31, 1920, an additional 2 per cent, payable on or before September 1, 1920, will be allowed on the net volume of business of [specification] new cars purchased from us and paid for from August 1, 1919, to July 31, 1920, providing, further, you have taken delivery of your full and complete allotment each month as due from October 1, 1919, to March 31, 1920, inclusive."

Motor Co. v. Motor Co.

The agreement provided it might be canceled on five days' written notice by either party, and the defendant canceled it, by notice dated April 24, 1920, taking effect five days from that date. The plaintiff made claim for the extra two per cent discount, in the sum of $1,191.30. The defendant replied as follows:

"The facts stated in your letter are not in accord with the facts as I understand them. I am of the opinion that you are under no circumstances entitled to the sum you claim by reason of the express terms of our agreement. On the other hand, as you know, there was full and just cause for the action taken by our company in canceling your contract."

The plaintiff pleaded the selling agreement, the price list, the discounts, the shipping order which embraced the monthly allotment of cars, and the correspondence between the parties. The petition also contained the following:

"Plaintiff alleges that within the period provided for in said contract, to wit, between September 12, 1919, and March 24, 1920, inclusive, plaintiff  .  .  . purchased from defendant, under the terms and provisions of said written contract, motor cars of the models last above referred to, to the extent of a net volume of business of fifty-nine thousand five hundred sixty-five ($59,565.00) dollars, on which it was entitled to an additional 2% discount to the amount of eleven hundred ninety-one and $30/100$ ($1,191.30) dollars, as provided for in said contract.  .  .  .

"Said contract was terminated by defendant on or about April 24, 1920, and plaintiff avers that the fact that said contract was not in force and effect July 31, 1920, was not due to any fault or default of the plaintiff and its said predecessors, but was due wholly to the voluntary termination and discontinuance of said written contract by defendant in accordance with clause VIII of said agreement and by written notice from said defendant company under date of April 24, 1920,  .  .  ."

The number of cars allotted to the plaintiff for the months October 1, 1919, to March 31, 1920, inclusive, was 100. The plaintiff did not see fit to make a clean-cut statement that it took the allotment, as due, and resorted to a general allegation that it "duly performed all matters and things." It will be assumed the plaintiff took the allotment. Since no claim was made for additional discount on any cars taken after March 24, it will be assumed none were taken. The allotment for March was 21 cars, and the allotment for April was 22 cars. The allotment from March 31 to July 31 was 80 cars, and the notice terminating the agreement was given one month after the plaintiff ceased taking cars.

The defendant could fix the terms to which it would deliver cars to the plaintiff, and was not obliged to offer any bonus. Having

decided to offer a bonus, it could fix the conditions of payment. Two conditions were attached: first, continuance of relations under the selling agreement until July 31, 1920, and second, the acceptance of a specified number of cars monthly between October 1 and March 31. Privilege to terminate the selling agreement at any time was reserved. This provision of the agreement was coördinate with the offer of bonus, and had the effect of reserving privilege not to pay bonus, exercisable by canceling the selling agreement at any time before July 31, 1920. The plaintiff entered into relations with the defendant on those terms. The defendant was guilty of no breach of contract in exercising its privilege, and the plaintiff has no remedy on the agreement.

The plaintiff cites the case of *Zwolanek v. Baker Mfg. Co.*, 150 Wis. 517. In that case, a workman entitled to participate in a profit-sharing scheme as a reward for continuous service, was discharged one day before the reward was due. The court said the jury might have found the employer violated the contract by discharging the workman. No such finding would be possible in this case.

The plaintiff cites the case of *Scheuer v. Monash*, 83 N. Y. Supp. 253. In that case, the plaintiff agreed to work for a year, and was to receive a bonus if his sales exceeded the sum of $20,000. Employment was terminated by mutual agreement at the end of the tenth month. The sales had then aggregated more than $20,000. Termination of the employment by consent made the contract fully executed, in contemplation of law, and of course the bonus was allowed.

The plaintiff cites the case of *Haag v. Rogers,* 9 Ga. App. 650. In that case, the contract of employment was that it should remain in force while mutually satisfactory, that the workman should receive certain monthly wages, and that he should receive extra pay if he remained in service until the end of the circus season. On November 2 he was discharged for fighting. The contract imposed a fine of five dollars for fighting on the show grounds. The syllabus reads as follows:

"The law will not construe a contract so as to give the debtor the right to destroy it by a simple refusal to comply with it, unless the terms of the contract are so clear and unambiguous as to make irresistible the conclusion that no other result could possibly be reached." (Syl. ¶ 1.)

There was no evidence relating to the fight, and the workman

Motor Co. v. Motor Co.

may have done no more than defend himself. The court held the question whether fighting on the show ground was cause for discharge, was a jury question, and said:

"Unless the language of the contract is too clear to admit of any other reasonable interpretation, the employer can not capriciously terminate the contract himself so as to avoid liability for the wages at the higher rate. Here the season was nearly over. To construe the contract as allowing the defendant then to terminate it without sufficient cause, and thereby to deprive the plaintiff of the extra compensation which was being held back as a guarantee against his quitting, would be to give the contract an oppressive and unnatural effect, which can hardly be said to have been within the fair contemplation of the parties." (p. 654.)

In this instance, the language of the contract is clear and unambiguous. Paragraph VIII reads as follows:

"Either party may cancel this agreement by five days' written notice to the other. If cancelled, we are to have the privilege of repurchasing at cost of same to you any of our new current models which you have on hand in first-class condition unsold and which have not been used. This does not apply to demonstrating cars, which will not be considered for repurchase by us."

The plaintiff was not an employee of the defendant, or a wage-earner, or other person for whom the courts are inclined to open to interpretation quite plain contracts, in order to prevent hardship. The selling agreement did not relate to a business affected with a public interest, which may be taken into account in interpretation. The parties were manufacturer and dealer, in ordinary relation appropriate to the nature of the business. They stood on equal footing before the law, and left no doubt of their intentions. The plaintiff agreed the subject of bonus should be left to the defendant's discretion, exercisable in a stated way, and this court is not permitted to rewrite the agreement.

The Georgia court of appeals spoke of construing a contract to give one party the privilege of destroying it by simple refusal to perform. The language was not well chosen. Parties are not forbidden to make an agreement in which one, or both, reserves the right to cancel at pleasure. Should they make such an agreement, it does not constitute a contract, because it lacks mutuality.

(1 Williston on Contracts, § 105; *M'Caffrey v. B. B. & R. Knight*, 282 Fed. 334; *Ellis v. Dodge Bros.*, 237 Fed. 860; *Velie Motor Car Co. v. Kopmeier Motor Car Co.*, 194 Fed. 324, 114 C. C. A. 284; *Bernstein v. W. B. Manufacturing Co.*, 238 Mass. 589.)

Such an agreement is not strengthened by inserting the expres-

sion "for good cause," or the expression "for just cause," as a condition to cancellation. Such expressions furnish no criterion by which to determine what cause or causes the parties had in mind, and cancellation for whatever is considered in good faith as cause, is permissible. (*Oakland Motor Car Co. v. Indiana Automobile Co.*, 201 Fed. 499, and authorities cited in the opinion.)

In the Wisconsin case the court said:

"It is true as a general proposition that a party making an offer of a reward may withdraw it before it is accepted. But persons offering rewards must be held to the exercise of good faith and cannot arbitrarily withdraw their offers for the purpose of defeating payment, when to do so would result in the perpetration of a fraud upon those who in good faith attempted to perform the service for which the reward was offered." (*Zwolanek v. Baker Mfg. Co.*, 150 Wis. 517, 525.)

If the plaintiff desired to base recovery on this theory, it should have pleaded facts showing bad faith whereby it was defrauded of a substantially earned bonus. An agreement which by express terms allows either party to cancel at will, binds neither to performance of anything after cancellation. Cancellation ends obligation to perform, and precludes liability for nonperformance. There is no basis on which to predicate default, and of necessity any equities which may have arisen and which would estop the canceling party from denying obligation to perform must be specially pleaded. In this instance the plaintiff pleads nothing which he should not have foreseen when he entered into the selling agreement. The agreement was in effect that, although the plaintiff should take the full allotment of cars between October 1 and March 31, the agreement might nevertheless be canceled on April 24, without liability on the part of the defendant to pay a bonus. In the case of *Ellis v. Dodge Bros.*, 237 Fed. 860, the headnote reads:

"A contract by which a manufacturer of motor cars granted the right to a dealer to sell its cars within a certain territory for its term, with an agreement by the dealer to purchase a stated number of cars each month during the term, but which did not obligate the manufacturer to furnish the cars, and further provided that it might be canceled by either party at any time on 15 days' witten notice, *held* void for lack of mutuality, and not enforceable."

In the opinion, by Newman, district judge, it was said:

"So that we come to the proposition as to whether or not there has been such performance of the contract on the part of the plaintiff as would prevent the defendant, Dodge Bros., from setting up a lack of mutuality in the agreement between the parties. The agreement has the following provision: 'This

agreement shall expire by limitation June 30, 1915, or may be canceled by the manufacturer or dealer upon fifteen days' written notice. . . .'

"This provision would be fatal to this agreement, as a binding contract between the parties, if it was not otherwise objectionable. [Citations.] It seems to me that, with this provision in the contract for its cancellation by either party, and without any reason given therefor, simply the right to cancel at will, it would be practically no contract at all. Even if there were an agreement here on the part of Dodge Bros. to deliver the cars, this right to cancel would seem to nullify any such agreement. To agree to do something and reserve the right to cancel the agreement at will is no agreement at all.

"As I understand the contention of the plaintiff here, it is that his renting a store on Peachtree street, and employing salesmen and also an office force, was such compliance with the contract on his part as would estop the defendant from setting up lack of mutuality, and, as I presume it is intended. by the plaintiff, also from setting up the right to cancel in this proceeding. I am unable to agree with the plaintiff about this. . . .

"Why the plaintiff incurred the expense claimed, in view of the character of the agreement he had with the defendant, it is difficult to understand. He certainly was not justified in doing so by anything the defendant had undertaken to do, as I read the agreement." (pp. 867, 868.)

Suppose the petition, without other change of allegation concerning termination of the selling agreement, had shown the notice was served on July 25, to take effect on July 30, one day before the bonus was due. What right to the bonus would the plaintiff have? The question is answered in principle for all cases in which payment of reward is left to the will of the person offering it, by the decision in the case of *Campbell v. Holcomb*, 67 Kan. 48, 72 Pac. 552. Holcomb accepted the following proposition to employ him as a commercial traveler:

"Now, we make you this proposition: We are willing to engage you upon a salary of $75 per month and your traveling expenses, and further state that if your connection continues with us for the period of an entire year, and the character of your business as to volume, etc., and the manner of your conducting it is satisfactory to us, we are willing to make this salary equivalent to $100 per month by the payment of the $25 excess at the close of the year, under the conditions named. The determination of this you must leave entirely to us. . . ." (p. 49.)

He continued in service for more than a year, at $75 per month, and sued for the bonus. No fraud was charged or proved. In the opinion the court said:

"The fact that plaintiff continued to work for the company after the expiration of the year was no evidence of such satisfaction with his efforts as rendered the additional sum due. It proved nothing more than that the company was still willing to pay him seventy-five dollars per month for

what he was doing. The plaintiff had a perfect legal right, if he so desired, to agree to work for seventy-five dollars per month, and leave it to his employer to say if he should receive more. Having done so, he is bound by his contract. His conduct may have been wise or unwise, but the company plainly told him it would deal with him on no other terms. He accepted the hazard and must abide the result." (p. 52.)

The judgment of the district court is affirmed.