(695 P 2d 450)
No. 56, 349

MORTON BUILDINGS, INC., *Appellee,* v. DEPARTMENT OF HUMAN RESOURCES, *Appellant.*

Opinion filed February 21, 1985.

*A. J. Kotich* and *Annette Gurney,* of Kansas Department of Human Resources, of Topeka, for appellant.

*John D. Gatz,* of Lowe, Starkey, Wilks and Gatz, of Colby, for appellee.

Before PARKS, P.J., BRISCOE, J., and JEROME HARMAN, Chief Judge Retired, assigned.

PARKS, J.: This is an appeal by the Kansas Department of Human Resources (KDHR) of the district court's decision granting summary judgment to the plaintiff, Morton Buildings, Inc.,

(Morton) on its appeal of an administrative decision. KDHR is the statutory assignee of wage claims of two former employees of Morton. K.S.A. 44-324(b). The wage claims were granted by administrative order but denied by the district court on appeal. The issue now presented is whether profit sharing benefits provided by the employer were "earned wages" under K.S.A. 44-315(a).

Theresa Keck was employed by Morton as a secretary pursuant to an oral contract of employment and the written terms of the Morton Sales and Office Personnel Employee Handbook. As a salesman, the second employee, Donald Delzeit, was employed under the terms of a written employment agreement as well as those stated in the employee handbook. The employment of both individuals was terminated by the employer in January 1982. They each filed a claim for wages with the KDRH and the administrative hearing officer ordered that they be awarded their profit sharing benefit for 1981 plus prejudgment interest. On appeal the district court reversed and granted summary judgment to Morton on the grounds that the profit sharing benefit did not constitute earned wages because the condition precedent in the profit sharing plan had not been satisfied. KDHR appeals this decision, as assignee of the wage claims.

The fringe benefit of profit sharing sought by the former employees in this case is governed by the following provision of the employee handbook:

"PROFIT SHARING PLAN. In 1963 the Company instituted a profit sharing plan with benefits payable to full-time employees based on a formula under which 20% of the profits, after providing a 5% return on the stockholders' investment is divided by the total payroll to obtain a Company wide profit sharing percentage. This percentage is applied to each employee's yearly gross wages to arrive at their profit amount.

"This method is still used for plant and office employees.

"Sales office employees may get more or less than the Company wide percentage. Employees of sales offices get ¼ of the profit sharing money based on the company wide percentage. The other half is put into a pool which is distributed according to the percentage of profit each office makes in relation to the total profit made by all the sales offices.

"The final profit sharing percentage is not computed until after the year-end closing. The Company does, however, distribute a portion of the profit sharing percent during the month of December, with the final payment being made as soon as possible after March 15.

"EMPLOYEES MUST BE ON THE PAYROLL AT THE DECEMBER AND MARCH DISTRIBUTION DATES TO RECEIVE PROFIT SHARING."

In addition to these provisions of the handbook, Delzeit's written employment contract with Morton included the following provision regarding termination:

"Upon termination, Employee shall be paid that portion of his base salary accruing prior to termination and commissions, bonuses, profit sharing, incentives and the like, to the extent applicable and only if Employee's interest therein is vested upon termination, vesting to be determined in accordance with Morton's published corporate procedures in effect upon the date of termination. *In no event shall Employee be deemed to have a vested interest in . . . (b) profit sharing benefits unless Employee was employed on the date of payment of such amounts to Morton's Employees . . . ."* (Emphasis supplied.)

The Kansas Wage Payment Act requires all employers to pay a discharged employee his "earned wages" within a specified time. K.S.A. 44-315(a). The act further defines wages as "compensation for labor or services . . . determined on a time, task, piece, commission or other basis. . . ." K.S.A. 44-313 (c). The KDHR, as the agency charged with the task of administering this law, enacted the following regulation:

" 'Or other basis,' within the meaning of K.S.A. 44-313(c), shall include all agreed compensation for services for which the conditions required for entitlement, eligibility, accrual or earning have been met by the employee. Such compensation may include, but is not limited to, profit sharing, fringe benefits, or compensation due as a result of services performed under an employment contract that has a wage rate required or implied by state or federal law. Conditions subsequent to such entitlement, eligibility, accrual or earning resulting in a forfeiture or loss of such earned wage shall be ineffective and unenforceable." K.A.R. 49-20-1(d) (1983 Supp.).

Despite the apparent remedial purpose of the wage payment law, the condition precedent/condition subsequent terminology of this regulation has compelled our courts to conclude that the wording of the documents describing the terms of the employment contract control the determination of entitlement to fringe benefits. *Sweet v. Stormont-Vail Regional Medical Center*, 231 Kan. 604, Syl. ¶ 3, 647 P.2d 1274 (1982); *Dangerfield v. Montgomery Ward Co.*, 236 Ka. 594, 694 P.2d 439 (1985). Thus, our task of deciding whether the profit sharing benefit was an earned wage is framed by the KDHR regulation and court precedents as one of deciding whether the documents drafted by the employer place a condition precedent on entitlement to the benefit or whether they attempt to impose a forfeiture.

A condition precedent is something that it is agreed must happen or be performed before a right can accrue to enforce the main contract. *Sweet*, 231 Kan. at 610. In *Sweet*, a contract provision conditioning the receipt of compensation for unused vacation time on the tendering of two weeks' notice prior to voluntary termination, was held to be a controlling condition precedent. Thus, an employer may condition entitlement to a benefit on the performance of some act other than actual job tasks. However, a benefit earned under the employment contract cannot be reduced or forfeited by subsequent act or circumstance. Thus, a provision authorizing deductions from a bonus, which constituted the wages of an employee and which was fixed by the hours and location of work performed, was held to be an unenforceable condition subsequent in *Yuille v. Pester Marketing Co.*, 9 Kan. App. 2d 464, 468, 682 P.2d 676 (1984).

The KDHR contends that because the procedure described in the employee handbook for computing the profit sharing benefit of any particular Morton employee turns on figures which are calculated at the end of the year, the point at which the benefit is earned is actually December 31. Thus, it argues that the additional requirement that the employee be employed with the company on the March distribution date is an attempt to take away an earned benefit. This argument overlooks the maxim that a court must construe written contracts based on the whole without isolating individual sentences or provisions. *Desbien v. Penokee Farmers Union Cooperative Association*, 220 Kan. 358, 363, 552 P.2d 917 (1976). The final paragraph of the handbook provision unambiguously states the condition of employment at distribution as a condition of entitlement. Moreover, the intention to condition the earning of the benefit is stated even more forcefully in the written contract signed by claimant Delzeit. In sum, this case is like *Sweet*, not *Yuille*. The condition unfulfilled by the wage claimants is part of the contract definition of the point at which the benefit is earned rather than an attempt to withdraw a benefit which by definition has been earned. Therefore, the district court correctly held that the requirement of March employment was an enforceable condition precedent.

The KDHR argues that even assuming a condition precedent was not performed by the wage claimants, their position is distinguishable from the claimant in *Sweet* because they were

fired before they had the opportunity to fulfill the condition. The doctrine of prevention provides that a party to a contract cannot derive any benefit or escape any liability from his own failure to cause or failure to seek the happening of a condition precedent. *Wallerius v. Hare*, 194 Kan. 408, 412, 399 P.2d 543 (1965). See *In re Estate of Wurtz*, 214 Kan. 434, Syl. ¶ 4, 520 P.2d 1308 (1974); *Bartlett & Co., Grain v. Curry*, 1 Kan. App. 2d 242, 247, 563 P.2d 1096 (1977). Since Keck and Delzeit were prevented from being on the company payroll in March by their January termination by Morton, the KDHR argues that the employer should not be able to rely on nonperformance of the condition precedent to escape liability for the profit sharing benefits.

The doctrine of prevention is an equitable doctrine of excuse. 5 Williston on Contracts § 676 (3rd ed. 1961). A party who fails to satisfy a condition precedent may avoid the consequences of his failure if it is caused by the conduct of the other party to the agreement. However, the burden is on the party seeking to take advantage of the doctrine to prove its application. *Jensen v. Jensen*, 205 Kan. 465, 467, 470 P.2d 829 (1970). In addition, the conduct alleged to have thwarted performance of the condition must in some way be unjustified. Thus, in *Wallerius*, 194 Kan. at 412, the court stated that "the party who has demanded the condition precedent cannot hinder, delay or prevent its happening *for the purpose of avoiding performance of the contract.*" (Emphasis supplied.) Similarly, it is generally acknowledged that nonperformance of a condition may not be excused when the actions taken by the party allegedly hindering performance are actions which are permitted by the contract. 5 Williston on Contracts § 677A, p. 235. For example, a party who assumes the risk of cancellation of the contract with the inclusion of a provision permitting either party to cancel with five days' notice could not claim prevention of his performance by reason of the other party's exercise of its cancellation right. *Motor Co. v. Motor Co.*, 112 Kan. 522, 526, 212 Pac. 100 (1923). Therefore, in the context of this case, the employee seeking to rely on prevention to excuse his nonperformance of a condition precedent must be able to demonstrate his own lack of complicity in the employer's hindering conduct.

It is the law in this state that in the absence of a contract between the employer and its employee which establishes the

duration of employment, the employment is terminable at the will of either party. *Anco Constr. Co. v. Freeman,* 236 Kan. 626, 693 P.2d 1183 (1985). Therefore, with limited exception (a cause of action has been recognized for discharge in retaliation for filing a worker's compensation claim, *Murphy v. City of Topeka,* 6 Kan. App. 2d 488, 630 P.2d 186 [1981]), an employee may be discharged with or without cause. The at-will employee has no enforceable expectation of continued employment.

In this case, the wage claimants were both at-will employees. Delzeit had a written employment contract but it did not include any provisions establishing an agreed duration for his employment. In addition, although the result of subsequent unemployment compensation proceedings indicates that neither Keck nor Delzeit was discharged for a breach of duty (K.S.A. 44-706), the parties agree that there was no evidence that when it fired them in January, Morton acted with bad faith or for the purpose of depriving them of the profit sharing.

Keeping in mind the status of the wage claimants as at-will employees and the burden of proving the excuse of prevention, we conclude that the former Morton employees failed to establish that the company unjustifiably prevented them from satisfying the condition precedent to their right to obtain profit sharing benefits. Since claimants were not on the payroll at the March 1982 distribution date, the profit sharing benefit was not an earned wage under the terms of their employment contract.

Affirmed.