999 F.2d 548
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Antonio SMITH, Plaintiff-Appellant,
v.
DICKINSON OPERATING CO. and Dickinson, Inc., Defendants-Appellees.
 No. 92-3186.
 United States Court of Appeals, Tenth Circuit.
 June 29, 1993.
 
 ORDER AND JUDGMENT**
 Before SEYMOUR, Circuit Judge, RONEY, Senior Circuit Judge,* and MOORE, Circuit Judge.
 RONEY, Circuit Judge.
 
 
 1
 Antonio Smith brought a Title VII race discrimination and state law breach of contract action against Dickinson Operating Company and Dickinson, Inc. (it is unclear which one of the related companies employed Smith). Smith claimed disparate treatment in five employment situations: compensation, fringe benefits, training, promotion and termination. The district court granted summary judgment for Dickinson. We affirm on the ground that the district court correctly held that Smith failed to furnish evidence sufficient to prove a prima facie case of racial discrimination or breach of contract.
 
 
 2
 In order to defeat the summary judgment motion, Smith had to establish a prima facie case of discrimination. Dickinson may rebut the presumption of discrimination by articulating a nondiscriminatory reason for the disparity. The burden then shifts back to Smith to show that the reason is a pretext for discrimination. Drake v. City of Fort Collins, 927 F.2d 1156, 1159-69 (10th Cir.1991).
 
 
 3
 To support his claim of disparate treatment in compensation, Smith showed that other employees were paid differently, but did not establish the race of all the employees with whom he compared himself. Although he did show disparity as to the three employees whose race was established, it is not possible to make a prima facie case of discrimination by merely bringing to the court's attention a few employees who are of a different race and earn higher salaries without showing the race of everyone in the group who receives different compensation. This is especially so when Smith could not demonstrate that the three employees were similarly situated. Even if Smith's evidence could establish a prima facie case, Dickinson could rebut the presumption of discrimination by articulating nondiscriminatory reasons for the disparity. Drake, 927 F.2d at 1160. Dickinson did this. Dickinson showed that it made its compensation decisions based on the following factors: prior management experience, cost of living, additional job responsibilities, number of previous transfers, desirability of the theater location, and the financial condition of the theater. Employees who were compensated at a higher rate than Smith were compensated based on these factors. Although Smith had the opportunity to show that these reasons were pretextual under Drake, his evidence failed to create any issue of fact as to pretext.
 
 
 4
 As to fringe benefits, Smith claims disparity in the distribution of such benefits but only demonstrates that a manager of a year-round theater receives fringe benefits. Smith was not a manager of a year-round theater. He served as a manager for a brief time but only at a seasonal drive-in theater. Thus, he has not established a prima facie case of discrimination in the distribution of fringe benefits.
 
 
 5
 As to his claim of disparate treatment in training, Smith points out that at least six non-minorities were sent to management training school while he was never sent. While this fact may create an inference of discrimination, it was Dickinson policy to send employees to training school who had either no theater management experience or experience that was insufficient for the operation of a theater, and not to send assistant managers. Each employee that Dickinson sent to training school met the criteria. Because Smith had management experience with Dickinson as an assistant manager, he did not meet the criteria. Thus, his evidence fails to show that he was denied training because of his race.
 
 
 6
 As to Smith's claim that Dickinson discriminated when it promoted some employees but did not promote him, Smith did not establish the race of all cited individuals and, therefore, that evidence does not make out a prima facie case of discrimination. Even if the race of the individuals was established, Dickinson showed unrefuted evidence of non-discriminatory reasons for its actions. Dickinson policy was to promote employees based on prior management experience and, in some cases, residence in the community where the position became available. When management positions became available during Smith's employment, Smith either had less experience than the person promoted or did not live in the community where the position became available. Therefore, his evidence did not establish a prima facie case of discrimination in promotion.
 
 
 7
 As to termination, the undisputed evidence shows that Dickinson terminated Smith for a breach of security policy. Dickinson terminated non-minorities for the same breach. Smith received one warning before he was terminated. Similarly, Bill Brown, a non-minority employee, was terminated after one warning. Even accepting Smith's argument that Brown was terminated after two warnings, that fact does not create an inference of discrimination particularly when Brown received his first warning before Dickinson informed its employees that violation of the policy would result in automatic termination. After Smith's termination, a non-minority employee, Keith Bostwick, was terminated for his first breach of the same security policy. Smith thus failed to establish a prima facie case of disparate treatment in termination.
 
 
 8
 Smith could establish that Dickinson's reasons are a pretext for discrimination by demonstrating that racial discrimination actually motivated Dickinson or by showing that its reasons are unworthy of belief. Smith argues that Dickinson's reasons are a pretext because a juror could disbelieve Dickinson's articulated reasons. In order to prevail on this issue, however, Smith must offer some evidence that raises a factual issue as to whether defendant's reasons are pretextual, i.e., Smith must show some evidence that would give the jury a basis for disbelieving defendant's evidence. Drake, 927 F.2d at 1160.
 
 
 9
 Smith's breach of contract claim arises out of his discrimination claim. He claims that he had an oral contract with Dickinson for a promotion and that Dickinson breached the contract by never promoting him. Assuming without deciding that a contract existed, there was never a breach of the agreement because no positions were available while Smith was employed by Dickinson.
 
 
 10
 Smith argues that the doctrine of prevention should apply. The doctrine of prevention concludes that a party to a contract cannot escape responsibility when his unjustified actions prevent the occurrence of a condition precedent. Morton Buildings, Inc. v. Dept. of Human Resources, 695 P.2d 450 (Kan.Ct.App.1985). Smith argues that because Dickinson wrongfully terminated his employment, Dickinson prevented him from being employed at the time a position became available. This argument turns on the argument that Smith was terminated as a result of discrimination or for some other improper reason. The unrefuted evidence shows, however, that Smith was terminated because he violated company policy. Dickinson received a report from another employee, Keith Bostwick, that he found unsecured money when he got to work in the morning and that Smith was the last employee to leave the night before. This was a violation of company policy subject to termination of employment. Dickinson was only required to have a reasonable belief that Smith violated company policy, and was not required to prove that Smith had violated the policy in order to establish the reason for his termination. Clearly, the report Dickinson received was sufficient to support a reasonable belief that Smith violated the security policy. Thus, Dickinson's conduct was not shown to be unjustified so the doctrine of prevention is inapplicable.
 
 
 11
 AFFIRMED.
 
 
 
 *
 Honorable Paul H. Roney, Senior United States Circuit Judge for the Eleventh Circuit Court of Appeals, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for the purposes of establishing the doctrines of law of the case, res judicata or collateral estoppel. 10th Cir.R. 36.3