NOT DESIGNATED FOR PUBLICATION

No. 126,855

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SPICIN FOODS, INC.,
*Appellant*,

v.

ROBERT C. MAXFIELD, GREGORY S. DENNIS, and KANSAS DEPARTMENT OF LABOR,
*Appellees*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; TIMOTHY L. DUPREE, judge. Submitted without oral argument. Opinion filed December 20, 2024. Affirmed in part, reversed in part, and remanded with directions.

*John F. Doyle* and *R. Evan Jarrold*, of Constangy, Brooks, Smith & Prophete, LLP, of Kansas City, Missouri, for appellant.

*Heather Wilke*, special assistant attorney general, of Office of Legal Services, Kansas Department of Labor, for appellee.

Before WARNER, P.J., HILL and COBLE, JJ.

PER CURIAM: Spicin Foods, Inc. appeals the Wyandotte County District Court's judgment affirming the Kansas Department of Labor's (KDOL) determination that the company owed Robert C. Maxfield and Gregory S. Dennis wages and interest for unpaid, earned commissions. Spicin Foods contends that KDOL misconstrued and misapplied the employment contract, which erroneously led it to find that Maxfield and Dennis had earned their commissions before resigning their positions with Spicin Foods. Although argued as separate issues on appeal, the issues are so interconnected that they are

properly addressed as a single issue. Spicin Foods also argues that KDOL abused its discretion in awarding Maxfield and Dennis interest on the unpaid commissions. After thorough review of the individual memoranda sent to each, we affirm the district court's opinion as to Maxfield but reverse the district court's opinion with instructions to remand to the agency for recalculation of Dennis' award. And finding no abuse of discretion, we affirm the award of interest.

FACTUAL AND PROCEDURAL BACKGROUND

Maxfield and Dennis worked for Original Juan Specialty Foods (Original Juan) as sales representatives and company vice presidents. They were paid a base wage, and commissions based on a percentage of sales. The commissions were calculated at the end of each sales quarter and paid in equal installments over the following quarter.

In April 2018, Scott Morse purchased Original Juan and renamed the company Spicin Foods, Inc. The prior owner of Original Juan paid Maxfield and Dennis the commissions they had accrued up to the date of sale in lump payments. The paycheck stubs presented by Maxfield and Dennis show that they received no commissions in April, May, or June 2018, consistent with the lump sum payment they received for commissions during the previous quarter. Both Maxfield and Dennis claim that Morse promised to continue to pay commissions in the manner that Original Juan had paid them.

On June 18, 2018, Morse issued an interoffice memorandum to Maxfield regarding compensation for 2018, which read:

> "The 2018 sales compensation scheme for Spicin Foods will essentially carry over what was in place under Original Juan. A quarterly sales commission will be calculated in accordance with the Original Juan plan and paid in equal installments over the following quarter with your normal paycheck.

2

"Salary review—beginning July 1, 2018 your base pay will increase from $45,000 per year to $55,000 per year plus sales commissions.

"Compensation Guarantee—your total pay (salary + commissions) for 2018 (combined Original Juan and Spicin Foods) will be guaranteed at no less than $115,000. Any shortfall from what is earned will be made-up to the guaranteed level by increasing your 4th quarter bonus—paid in equal installments over the following quarter along with your salary and normal commissions.

"Nothing above changes your status as an 'at will' employee and payment of the guaranteed compensation is contingent upon your continued employment with Spicin Foods through March 2019 (the final payment period for the 2018 bonus plan)."

The interoffice memorandum directed to Dennis was different, providing the following:

"The 2018 sales compensation scheme for Spicin Foods will essentially carry over what was in place under Original Juan. A quarterly sales commission will be calculated in accordance with the Original Juan plan and paid in equal installments over the following quarter with your normal paycheck.

"A new sales compensation plan will be developed and implemented for 2019. Details of the new plan will become available before the end of 2018 (4th quarter).

"Nothing above changes your status as an 'at will' employee and payment of the sales commissions is contingent upon your continued employment with Spicin Foods."

Dennis acknowledged receiving this memo. But he claimed that no one with Spicin Foods characterized the commissions as discretionary retention bonuses. Maxfield also acknowledged through his testimony that he was familiar with the contents of the interoffice memo he received. All parties concede that these two memos constitute the

3

only written documents related to the employment contracts between Spicin Foods and Maxfield and Dennis, respectively.

Maxfield and Dennis were paid commissions in July and August, but the commissions ended after they resigned their positions with the company on August 23. Maxfield and Dennis claim that Spicin Foods did not pay them the commissions they were entitled to receive.

When his September 7 check did not include installment payments on his commissions, Dennis emailed the company to inquire when the remaining second quarter and the third quarter commissions would be paid.

Morse responded to Dennis, informing him that the commissions were part of an incentive compensation program and payment of the commissions was contingent on continued employment through the payroll period in which the installment payments would be made. Dennis responded, explaining his understanding that the commissions were earned during his employment with Spicin Foods. Morse replied as follows:

> "During your short tenure at Spicin Foods, you were the beneficiary of discretionary bonus payments. As discussed, the purpose of those payments were to maintain your compensation at a level commensurate to what you had earned at Original Juan until such time that a Spicin Foods incentive comp plan was put in place—as discussed, the Spicin Foods plan is to go into effect on Jan. 1, 2019. The discretionary bonus payments were a stop gap measure designed only for employee retention.
>
> "The legal obligation related to your employment by Spicin Foods was the payment of your base salary. With your final paycheck having been issued, that obligation has been fully satisfied."

Dennis and Maxfield filed separate administrative claims for wages with KDOL. Dennis claimed $3,963.28 in unpaid commissions earned between April 2, 2018, and June 30, 2018, and $5,636.31 in unpaid commissions earned between July 1, 2018, and August 23, 2018, for a total of $9,599.59. Maxfield claimed $5,413.42 in unpaid commissions earned between April 2, 2018, and June 30, 2018, and $7,619 in unpaid commissions earned between July 1, 2018, and August 22, 2018, for a total of $13,032.42. After receiving responses from Spicin Foods and obtaining additional information from Dennis and Maxfield, KDOL scheduled a joint hearing on both claims.

After hearing testimony from Maxfield, Dennis, and William Goodman, the chief financial officer of Spicin Foods, the administrative law judge (ALJ) took the matter under advisement, rendering judgment in favor of Maxfield and Dennis in an order dated August 30, 2019. The order held Spicin Foods, Morse, and Goodman jointly and severally liable for the award.

Spicin Foods appealed to the Secretary of Labor (Secretary). The petition for agency review listed only Spicin Foods as the respondent; it did not include Morse or Goodman. The Secretary affirmed the decision of the ALJ. Spicin Foods then timely appealed to the Wyandotte County District Court. Again, the petition for judicial review named only Spicin Foods as the respondent. After receiving briefs from the parties, the district court held a nonevidentiary hearing on June 9, 2023. A few days later, the district court issued its journal entry, affirming the agency action.

Spicin Foods timely appeals.

## DID KDOL ERR IN CONSTRUING AND APPLYING
## THE EMPLOYMENT CONTRACT BETWEEN THE PARTIES?

Yes, and no. But before we can delve into the merits of this question, examination of the parties' disputes requires us to outline several legal principles.

1. *Applicable Legal Principles*

Because this is an appeal from an agency decision, the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., controls appellate review. K.S.A. 44-322a(c); see *Coma Corporation v. Kansas Dept. of Labor*, 283 Kan. 625, 628, 154 P.3d 1080 (2007). Under the KJRA, an appellate court conducts the same statutorily limited review of the agency's action as the district court conducted, as though the appeal had been made directly to the appellate court. In other words, an appellate court owes no deference to the district court's judgment. *Bd. of Cherokee County Comm'rs v. Kansas Racing & Gaming Comm'n*, 306 Kan. 298, 318, 393 P.3d 601 (2017).

Judicial review of an agency action, whether in the district court or in an appellate court, is limited by the provisions of K.S.A. 77-621(c). The party asserting error by the agency carries the burden of establishing the invalidity of the agency action by articulating a basis for relief under K.S.A. 77-621(a)(1). *Bd. of Cherokee County Comm'rs*, 306 Kan. at 318.

One of the bases for relief stated in K.S.A. 77-621(c) is that "the agency has erroneously interpreted or applied the law." K.S.A. 77-621(c)(4). In its first appellate contention, Spicin Foods argues that KDOL erroneously construed and applied Kansas law in determining that Maxfield and Dennis had earned their commissions. KDOL counters that the issue is a question of fact because the ALJ made a fact determination

regarding when the commissions were earned. KDOL contends that the ALJ's fact determinations are supported by substantial competent evidence.

Although the ALJ determined that Maxfield and Dennis had earned their commissions before Spicin Foods was contractually obligated to pay them those commissions, the facts underlying the contractual relationship between Spicin Foods and Maxfield and Dennis, respectively, are not materially disputed. When the facts governing the contractual relationship are not disputed, interpretation and legal effect of the contract is a question of law subject to unlimited appellate review. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018); *U.S.D. No. 446 v. Sandoval*, 295 Kan. 278, 282, 286 P.3d 542 (2012).

The parties concur that Spicin Foods maintained the compensation structure used by Original Juan for Maxfield and Dennis after Spicin Foods bought the company in April 2018. They also do not dispute the nature of that compensation structure. Maxfield and Dennis earned a base salary plus commissions on sales. The commissions were figured differently for Maxfield and Dennis, but both commissions were based on gross sales during each quarter of the fiscal year. For both Original Juan and Spicin Foods, the fiscal year appears to have coincided with the calendar year. The commissions were calculated at the end of each quarter and then paid in equal installments over the next quarter.

Spicin Foods contends that Morse, the president and chief executive officer of Spicin Foods, modified the compensation structure for both Maxfield and Dennis on June 18, 2018, through the separate interoffice memoranda directed to them. Spicin Foods relies on these written documents to support its claim that the employment relationship was modified by the memos to impose a condition precedent that Maxfield and Dennis failed to satisfy. Accordingly, the company argues that the ALJ erred in awarding Maxfield and Dennis unpaid wages.

7

The legal effect of a written instrument is a question of law subject to unlimited appellate review. *First Security Bank v. Buehne*, 314 Kan. 507, 510, 501 P.3d 362 (2021). In this case, however, the modification of Maxfield's employment compensation structure differs from the modification of Dennis' employment compensation structure. Consequently, like the ALJ, we must consider the contractual modifications—each memorandum—separately.

2. *Maxfield's Interoffice Memorandum and Commissions*

On June 18, 2018, Morse, on behalf of Spicin Foods, issued an interoffice memo to Maxfield, purportedly changing Maxfield's compensation for employment with the company. The memorandum states that the compensation scheme in place under Original Juan Specialty Foods would *essentially* continue forward for 2018. Spicin Foods contends that the use of the term "essentially" indicated a modification to the compensation scheme. As a matter of English usage, Spicin Foods is correct. In this context, "essentially" is used to modify the idea that Spicin Foods would continue to implement the Original Juan compensation scheme. The basic or fundamental nature of the compensation scheme would continue, thus implying that some less fundamental aspects of the scheme would be modified. See Webster's New World College Dictionary 497 (5th ed. 2020) (defining "essential" as "of or constituting the intrinsic, fundamental nature of something; basic; inherent").

This subtle signal of a change in the compensation scheme, however, does not support Spicin Foods' reading of the memo because the next paragraph of the memo announced a raise in Maxfield's base annual salary by $10,000. As a deviation from Maxfield's previous base annual salary, this paragraph already constituted a change in the compensation scheme that would warrant the introductory statement.

8

The next paragraph also implemented a change by introducing a compensation guarantee that Maxfield's combined compensation for 2018 (salary and commissions) would equal no less than $115,000. If his combined compensation was less than $115,000, Spicin Foods would make up the difference in a fourth quarter bonus, which would be paid in the first quarter of 2019, along with any fourth quarter commissions. In essence, the guaranteed compensation provision committed Spicin Foods to supplement Maxfield's fourth quarter commissions with a bonus, if Maxfield's total salary and commissions for the year did not equal or exceed $115,000. While Morse and Goodman characterized the guaranteed compensation as a discretionary bonus, nothing within the language of the interoffice memo suggests that Spicin Foods could withhold the bonus if all the conditions were satisfied. Consequently, a more accurate characterization would be that the memo implemented a *conditional* bonus, not a discretionary bonus. The bonus—supplementing Maxfield's total annual compensation to reach a minimum $115,000—was conditioned on his continued employment with Spicin Foods through March 2019 (the final period of installment payments for the fourth quarter of 2018 with the bonus).

Contrary to Spicin Foods' construction of this condition, however, nothing within the June 18 memo to Maxfield suggests that his receipt of commissions was conditioned on continued employment with the company at the time of payment. Rather, the memo indicates that only the bonus—the supplemental income promised by the compensation guarantee—was conditioned on Maxfield's continued employment through March 2019. Accordingly, a reasonable reading of the memo does not support Spicin Foods' argument that Maxfield was required to remain employed with the company to receive payment of commissions. Such a reading makes no sense when read in context since the provision imposing the condition of continued employment does not refer to commissions at all; it refers only to the compensation guarantee.

Because the memo changed the terms of an existing employment relationship, it constituted a contract modification. A modification of an employment contract must satisfy the same elements as the original contract: offer, acceptance, and consideration. Acceptance and consideration are deemed satisfied if an employee at-will continues to work in the position after an employer announces (offers) the modification to the terms of employment. *Smith v. Kansas Orthopaedic Center*, 49 Kan. App. 2d 812, 816, 316 P.3d 790 (2013); see *Dangerfield v. Montgomery Ward Co.*, 236 Kan. 594, 600, 694 P.2d 439 (1985). But an essential component of this presumption is communication of the modified terms of employment to the employee. In other words, the parties must have a mutual understanding of the terms of the modification. *Fast v. Kahan*, 206 Kan. 682, 684-85, 481 P.2d 958 (1971).

To the extent that Spicin Foods intended any payment of commissions to be conditioned on continued employment at the time of payment, that intent was not communicated to Maxfield in the June 18 interoffice memo Morse sent to him. We would be required to conduct a tortured reading of the memo to reach the interpretation Spicin Foods advocates for. Maxfield testified that he understood the continued-employment condition to relate to the compensation guarantee, which he does not seek in his wage claim. This understanding is supported by a natural reading of the memo and was credited by the ALJ. At best, Spicin Foods can demonstrate only that Maxfield understood the modification to the terms of his employment differently than Spicin Foods intended. This fails to establish the requisite mutual understanding to enforce a modification in the terms of employment. See *Duling v. Mid American Credit Union*, 63 Kan. App. 2d 428, 440, 530 P.3d 737 (2022) (citing *Fast*, 206 Kan. at 684-85).

For these reasons, and because Spicin Foods does not challenge KDOL's findings regarding the amount of unpaid commissions Maxfield earned, the district court's judgment affirming the agency's award to Maxfield is affirmed.

10

3. *Dennis' Interoffice Memorandum and Commissions*

Although the first and last paragraphs of Dennis' interoffice memorandum are like Maxfield's memorandum, the middle paragraph is much shorter and differs substantially from the middle two paragraphs in the Maxfield memorandum. And, the differences in language within the final paragraph, while slight, are significant.

Again, the first paragraph indicates that commissions earned in the employment of Spicin Foods will be paid in *essentially* the same manner as they were paid by Original Juan. But the second paragraph of the memo to Dennis does not discuss a salary increase or a compensation guarantee. Rather, it simply mentions that the current commission scheme is a placeholder until Spicin Foods implements a new compensation plan in 2019. The final paragraph is also different. There is no mention of a compensation guarantee. Instead, the memo provides that "payment of the sales commissions is contingent upon your continued employment with Spicin Foods."

As discussed, the memo's use of the term "essentially" signals a modification to the existing compensation scheme. The second paragraph does not discuss any changes to the compensation scheme but merely indicates that the existing compensation scheme is temporary. According to Spicin Foods, the final paragraph details the modification to the compensation scheme implemented by the memo. If so, the language in the final paragraph does not do so unambiguously.

By its plain language, the final phrase of the memo conditioned *payment* of commissions on continued employment. But the meaning of this phrase is subject to more than one reasonable interpretation. One reading is that Dennis is entitled to payment of commissions on sales conducted while he is employed with Spicin Foods. This reading is reasonable considering the commission structure, which calculates commissions at the end of a quarter. The details of the commission scheme are not disclosed in the record,

but, arguably, under the commission compensation scheme, an employee could work for one month out of the quarter and demand a commission for all the sales accrued during that quarter. The final phrase of the memo to Dennis, then, could merely emphasize that an employee is paid only for commissions on sales that occurred while he or she is employed with Spicin Foods. This interpretation, however, is not the most probable. That intent could be expressed more clearly simply by stating that commissions will only be paid on sales that occur while the employee is employed with Spicin Foods.

The more reasonable construction of the phrase is to limit an employee's entitlement to payment of commissions to those employees who are employed with Spicin Foods at the time of payment. This is both the construction Spicin Foods gives the phrase and the construction the ALJ gave the phrase. While providing the interoffice memo the same construction that Spicin Foods gave it, the ALJ found the condition unenforceable as a forfeiture of wages under the Kansas Wage Payment Act (KWPA), K.S.A. 44-313, et seq. Spicin Foods contends that the ALJ improperly construed the condition as a forfeiture of wages rather than a condition precedent to earned wages.

Under Kansas law, an employer must pay an employee earned wages after the end of an employment relationship no later than the next regular payday on which the employee would have been paid if still employed. K.S.A. 44-315(a). "'Wages'" are statutorily defined as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis less authorized withholding and deductions." K.S.A. 44-313(c). Once a wage is earned, the KWPA prevents an employer from implementing a contractual provision that withholds payment of an earned wage. See K.A.R. 49-20-1(d) ("Conditions subsequent to such entitlement, eligibility, accrual or earning resulting in a forfeiture or loss of such earned wage shall be ineffective and unenforceable.").

12

A wage is not earned until an employee has an absolute right to payment. *Yuille v. Pester Marketing Co.*, 9 Kan. App. 2d 464, 467, 682 P.2d 676 (1984). Parties to an employment contract may negotiate conditions for earning compensation for employment. Appellate courts generally enforce contracts according to their terms unless the terms are unreasonable or contrary to the law. *Weinzirl v. The Wells Group, Inc.*, 234 Kan. 1016, 1019, 677 P.2d 1004 (1984); *Doan Family Corp. v. Arnberger*, 62 Kan. App. 2d 769, 773, 522 P.3d 364 (2022).

Based on the prohibition against conditions subsequent in K.A.R. 49-20-1(d), Kansas courts have distinguished between conditions precedent and conditions subsequent when considering the validity of a contractual provision that prevents an employee from collecting wages. *Morton Bldgs., Inc. v. Department of Human Resources*, 10 Kan. App. 2d 197, 199, 695 P.2d 450 (1985). "A condition precedent is something that it is agreed must happen or be performed before a right can accrue to enforce the main contract." 10 Kan. App. 2d at 200. In contrast, "a benefit earned under the employment contract cannot be reduced or forfeited by subsequent act or circumstance" through a condition subsequent. 10 Kan. App. 2d at 200.

Though the ALJ characterized the conditional payment of commissions as a forfeiture of earned wages, or a condition subsequent, Spicin Foods argues that employment was a lawful condition precedent to the payment of commissions. Spicin Foods' argument has merit based on the analysis provided in *Morton Bldgs.*

In *Morton Bldgs.*, 10 Kan. App. 2d at 200, the governing employment contract provided for year-end profit sharing. The profit-sharing provision of the contract, however, was modified by the following condition: "EMPLOYEES MUST BE ON THE PAYROLL AT THE DECEMBER AND MARCH DISTRIBUTION DATES TO RECEIVE PROFIT SHARING." 10 Kan. App. 2d at 198. Because this condition existed within the employee handbook and thus was a part of the employment contract when the

13

employees were hired, this court viewed the condition as a valid condition precedent that limited entitlement to the profit sharing unless the condition was satisfied. 10 Kan. App. 2d at 200. ("The final paragraph of the handbook provision unambiguously states the condition of employment at distribution as a condition of entitlement. . . . The condition unfulfilled by the wage claimants is part of the contract definition of the point at which the benefit is earned rather than an attempt to withdraw a benefit which by definition has been earned.").

The disputed provision within Dennis' June 18 interoffice memo is analogous to the condition at issue in *Morton Bldgs.* See also *Barker v. Kansas Dept. of Labor*, No. 114,199, 2016 WL 3202698, at *4 (Kan. App. 2016) (unpublished opinion) ("Had C3 wanted to limit the payment of commissions that way, it easily could have proposed language to that effect. And assuming Barker wished to continue working for C3, he would have had to accept the condition."). The ALJ was a bit hasty to write it off as an unlawful condition subsequent, forfeiting Dennis' ability to receive earned commissions.

Still, the condition imposed on commissions within Dennis' June 18 interoffice memo constituted a modification of an existing employment contract, under which the parties had been operating for nearly three months. Consequently, any attempt to apply the continued employment condition on commissions for sale made before June 18 are unlawful forfeitures because the condition did not exist when Dennis performed under the existing employment contract. See *Dressler v. Kansas Copters & Wings, Inc.*, No. 09-1016-MLB, 2010 WL 3168358, at *8 (D. Kan. 2010) (unpublished opinion) ("The condition on plaintiff's earning his wages had not occurred at the time plaintiff was to receive his final paycheck. The condition was also *in place prior to the earning of plaintiff's wages* and, therefore, was not a condition subsequent." [Emphasis added.]).

A modification in the terms of employment is enforceable only prospectively when the employee's continued employment constitutes acceptance of the employer's

14

offer for modified terms of employment. *Smith*, 49 Kan. App. 2d at 816; see *Dangerfield*, 236 Kan. at 600. Spicin Foods' withholding of commissions on sales completed before June 18 constitutes an illegal forfeiture of earned wages because, even if Dennis had not yet received payment for those commissions, the condition precedent of continued employment at the time of payment had not been imposed when he performed under the existing employment agreement, working as an employee for Spicin Foods when the sales, on which his commission was calculated, were completed. Therefore, although the pre-June 18 employment contract required Dennis to wait for payment until the third quarter for commissions accrued in the second quarter, his performance entitling him to payment of those commissions was complete when the sales occurred while he was employed with Spicin Foods. Under the pre-June 18 commission structure, Dennis would have been entitled to payment of commissions regardless of his employment status at the time of payment. After June 18, Dennis accepted the modified employment terms by continuing to work for Spicin Foods. See *Smith*, 49 Kan. App. 2d at 816.

Spicin Foods contends that the commissions for the second quarter had not been earned before June 18 because they were only earned at the end of the quarter when the quarterly sales were tabulated and commissions were calculated. This argument mistakes the effect of the contract modification created by the June 18 interoffice memo. Before the condition of continued employment was imposed, Dennis was entitled to a commission on total sales performed during the quarter. If, before or on June 18, Dennis had left his employment with Spicin Foods, his employment contract with Spicin Foods entitled him to a commission on sales completed during the quarter because the contract did not require continued employment as a condition of payment. See *Barker*, 2016 WL 3202698, at *4. Accordingly, if the contract modification imposing the condition precedent is enforced prospectively, the condition precedent cannot be used to deprive Dennis of commissions he would have been entitled to receive before he agreed to the modification of the terms of his employment.

15

Commissions earned between April 2, 2018, and June 18, 2018, should have been paid in equal installments in Dennis' paychecks between July 1 and August 23, when Dennis left his employment with Spicin Foods. Any commissions earned between April 2 and June 18 left unpaid after August 23 should have been paid in a lump sum in Dennis' final paycheck. The difficulty presented by the June 18 modification lies in the method of calculating commissions for Dennis. Unlike Maxfield, Dennis received a commission on all sales during the quarter. There is no dispute that Dennis worked for Spicin Foods the entire second quarter (April through June). The commission for the second quarter was calculated at the end of the quarter and then divided among the number of paychecks over the next quarter. So, Dennis performed and accrued commissions on sales throughout the second quarter, but he did not start receiving installment payments on the commissions until the third quarter. But, for 12 days of the second quarter, Dennis' right to payment of commissions was conditioned on his continued employment during the installment payment within the third quarter.

The calculations thus become complicated. If Morse had sent out the interoffice memo on June 18 but delayed implementation of the contract modification until the new quarter, the math would be relatively simple. Dennis would be entitled to payment for all commissions accrued in the second quarter, regardless of whether he was still working for Spicin Foods when the installments were to be paid. However, since the contract modification apparently became effective immediately on June 18, there is a period of 12 days at the end of June where payment of accrued commissions was contingent on continued employment with Spicin Foods at the time of payment. Dennis remained employed when the commissions were calculated but he did not remain with Spicin Foods until the commissions were entirely paid by installment.

Dennis is not entitled to any commissions accrued during the third quarter. All these commissions were subject to the June 18 modification, and Dennis was no longer employed with Spicin Foods during the fourth quarter, when the payments became due.

16

He is entitled to almost full compensation for unpaid commissions for the second quarter. For commissions on sales between April 2 and June 18, he is entitled to full payment of the commissions. Commissions on sales made between June 18 and June 30, however, must be calculated separately. Because payment of commissions accrued over an entire quarter were paid in installments, Dennis is entitled to be paid in installments for commissions accrued between June 18 and June 30 while he remained employed with Spicin Foods, i.e., until August 23. Because the third quarter encompassed July, August, and September, Dennis would be entitled to more than half the commissions earned on the sales conducted between June 18 and June 30. Due to the condition precedent imposed by the June 18 interoffice memo, Dennis would not be entitled to that portion of the third quarter installments after August 23 that are attributable to sales completed between June 18 and June 30.

As to Dennis' award, the judgment of the district court is reversed, and the matter is remanded to the district court for remand to the KDOL for recalculation of Dennis' award in compliance with these instructions.

### DID KDOL ABUSE ITS DISCRETION IN AWARDING MAXFIELD AND DENNIS PREJUDGMENT INTEREST ON THEIR UNPAID WAGES?

Spicin Foods next challenges KDOL's imposition of interest on the unpaid wages due Maxfield and Dennis, contending that the Secretary determined that the refusal to pay wages was not malicious.

Interest awarded on unpaid wages is governed by K.S.A. 44-323(a), which provides:

"(a) At the discretion of the presiding officer, interest, as provided under K.S.A. 16-201, and amendments thereto, may be assessed on wage claims found to be due and

17

owing from the date the wages were due as defined in K.S.A. 44-314, and amendments thereto."

As indicated by the plain language of the statute, an award of interest on unpaid wages is at the discretion of the presiding officer. *Weinzirl*, 234 Kan. at 1023; *Beckman v. Kansas Dept. of Human Resources*, 30 Kan. App. 2d 606, 616, 43 P.3d 891 (2002). Although abuse of discretion is not a specific ground for relief under the KJRA, Kansas appellate courts have frequently observed that an abuse of judicial discretion occurs when a court's decision is based on an error of law or fact or is otherwise unreasonable. See, e.g., *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). Kansas appellate courts have equated arbitrary, capricious, or unreasonable agency action under K.S.A. 77-621(c)(8) with an abuse of discretion. *In re Tax Appeal of River Rock Energy Co.*, 313 Kan. 936, 945, 492 P.3d 1157 (2021); see *Wheatland Electric Cooperative v. Polansky*, 46 Kan. App. 2d 746, 757, 265 P.3d 1194 (2011) ("Essentially, the test under K.S.A. 77-621[c][8] determines the reasonableness of the agency's exercise of discretion in reaching its decision based upon the agency's factual findings and the applicable law.").

As the party alleging an abuse of discretion, Spicin Foods bears the burden of persuasion on appeal. See K.S.A. 77-621(a)(1); *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017). Spicin Foods' framing of the issue on appeal raises a question of pure discretion. The company does not contend that the presiding officer's decision was premised on an error of law or fact; it simply argues that imposition of interest on the unpaid wages under the circumstances presented in this case is inequitable and so was an abuse of the presiding officer's discretion, because Spicin Foods' withholding of wages was not willfully malicious.

Spicin Foods cites *Weinzirl* for the proposition that appellate courts have upheld a district court's denial of interest in cases where the employer did not act in a willfully malicious manner. But while this characterization reflects the facts of *Weinzirl*, it is

18

improper to draw a larger principle from the holding. The district court in *Weinzirl* did not abuse its discretion in denying interest to the employees, but it does not logically follow that the inverse is also true—that the same district court would have abused its discretion if it had awarded interest. *Weinzirl*, 234 Kan. at 1023. Instead, discretion is premised on reasonableness. See *State v. Flack*, 318 Kan. 79, 99, 541 P.3d 717 (2024).

As discussed, Spicin Foods may not have withheld wages maliciously. To a limited degree, the withholding of wages may have been justified with respect to Dennis. Nevertheless, the decision to withhold the bulk of Dennis' commissions and all Maxfield's commissions was not based on a meritorious legal position. Accordingly, Spicin Foods should have paid most of the wages, which would have reduced its liability for interest. See K.S.A. 44-316(a). But, even if Spicin Foods' dispute about the commissions was made in good faith, the ALJ was justified in weighing which party was better able to handle the loss. By not paying the wages for years after they became due, Spicin Foods obtained the time value of that money and Maxfield and Dennis lost that value. Under such circumstances, we cannot say that no reasonable person in the position of the presiding officer would have made a similar decision. Spicin Foods has failed to establish an abuse of the ALJ's statutory discretion to award interest on the unpaid wages.

IS THE ADMINISTRATIVE RULING CONCLUSIVE AS TO MORSE AND GOODMAN?

In its reply brief, Spicin Foods responds to a passing reference in KDOL's brief that Morse and Goodman were not named as parties in the petition for judicial review, after mentioning that the Secretary affirmed the individual liability imposed on Morse and Goodman. Spicin Foods argues that a reversal of the administrative ruling against Spicin Foods applies equally to Morse and Goodman, even though they were not named parties in the judicial portion of the proceedings.

19

As a preliminary matter, we must recognize that this issue is not properly before us. KDOL did not raise Morse's and Goodman's failure to appeal the administrative ruling as a basis to avoid considering Spicin Foods' appellate arguments; it merely mentioned Morse's and Goodman's failure to appeal in reciting the procedural history of the case. KDOL proceeded to address Spicin Foods' appellate arguments on their merits and did not again mention the individual liability of Morse or Goodman. Spicin Foods then simply took up the argument in its reply brief. But a party may not raise new issues in a reply brief. *State v. McCullough*, 293 Kan. 970, 984, 270 P.3d 1142 (2012).

To the extent the issues were properly before us, Spicin Foods lacks standing to challenge a judgment against another party. See *Aeroflex Wichita, Inc. v. Filardo*, 63 Kan. App. 2d 588, 595-96, 534 P.3d 610 (2023) ("A party must generally assert its own legal rights and interests and not base its claim for relief on the legal rights or interests of third parties."). "A corporate owner or employee, a natural person, is distinct from the corporation itself, which is a legally different entity with different rights and responsibilities due to its different legal status." 18 C.J.S., Corporations § 6. Spicin Foods does not cite any authority demonstrating that it has standing to assert claims on behalf of Morse and Goodman. Without authority to demonstrate standing, we may refuse to reach the substantive merits. See *In re Adoption of T.M.M.H.*, 307 Kan. 902, 915-16, 416 P.3d 999 (2018).

Even if we reach the merits of this argument, it is moot with respect to Maxfield. The ALJ's award with respect to Maxfield is undisturbed on appeal. So, Morse and Goodman are in the same position they would have been in if they had appealed because the administrative ruling against Spicin Foods stands. See *State v. Roat*, 311 Kan. 581, 601, 466 P.3d 439 (2020) (holding an appeal moot when appellant cannot demonstrate with sufficient specificity that review of appellate issues implicates direct or collateral interests affecting the party's substantive legal rights).

With respect to our decision on Dennis' award, however, we are compelled to consider the issue because it necessarily leads to relief for Morse and Goodman as well as Spicin Foods. Generally, when an adverse civil judgment is imposed against multiple parties and less than all of the parties appeal, a reversal of the judgment as to the appealing parties does not justify reversing the judgment as to the non-appealing parties. *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.4, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981); *Shade v. Wheatcraft Industries, Inc.*, 248 Kan. 531, 542, 809 P.2d 538 (1991). Courts, however, have recognized exceptions when necessary to effectuate a fair resolution of the legal dispute, such as when the rights of the non-appealing parties are intrinsically intertwined with the rights of the appealing party. *Shade*, 248 Kan. at 542 ("When there are multiple plaintiffs or defendants in an action and when the rights of all parties are interwoven, or when the ruling of the trial court, reversed on appeal, affects the rights of all parties, a nonappealing party is entitled to the benefit of the appellate holding."); *Harms v. Burt*, 30 Kan. App. 2d 263, 268, 40 P.3d 329 (2002) (applying the exception when the appellate court reversed a lien priority determination that applied to an appealing party and a non-appealing party alike).

In this case, the administrative judgment against Morse and Goodman was premised on their liability as officers of the employer—Spicin Foods—responsible for implementing the decisions resulting in the wage withholding by the employer. See K.S.A. 44-322a(b) ("[T]he presiding officer shall order that the unpaid wages and any applicable damages be paid by the party responsible for their payment."); K.S.A. 44-323(b) ("Any officer, manager, major shareholder or other person who has charge of the affairs of an employer, and who knowingly permits the employer to engage in violations of K.S.A. 44-314 or 44-315, and amendments thereto, may be deemed the employer for purposes of this act."). The ALJ ordered joint and several liability for Spicin Foods, Morse, and Goodman because Morse and Goodman knowingly permitted the wage violations. The ALJ's ruling echoes the language of K.S.A. 44-323(b) and leads us to the

21

conclusion that Morse's and Goodman's liability is not independent from Spicin Foods' liability.

Because Spicin Foods has been successful in part in its challenge to the administrative judgment against it regarding the calculation of Dennis' compensation, the judgment must also be reversed in the same manner as to Morse and Goodman.

Affirmed in part, reversed in part, and remanded with instructions to remand to the agency to recompute the award to Dennis consistent with this court's opinion.